### Daniel M. Troy v. John W. Hanifin

[315 A.2d 875]

No. 2-73

Present: Barney, Smith, Keyser and Daley, JJ., and Larrow, Supr. J.

Opinion Filed February 4, 1974

*Manfred W. Ehrich, Jr., Esq.,* Bennington, for Plaintiff.

*Franklin P. Jones, Esq.,* and *W. Averell Brown, Esq.,* Bennington, for Defendant.

**Daley, J.** The defendant, in the year 1968, owned a summer camp situated upon approximately twelve (12) acres of land in Searsburg, Vermont. The plaintiff, a young fireman from New York City, had through a long friendship existing between the defendant and his father, occupied the premises on a few weekends prior to October, 1968. He became desirous of purchasing the property and, in November of 1968, entered into an oral agreement with the defendant for the purchase of the premises. The purchase price agreed upon was fourteen thousand dollars ($14,000). A deed of conveyance was to be given by the defendant when payment had been made in full. The plaintiff made a down payment of one thousand dollars ($1,000) in December, 1968; possession of the property was given to the plaintiff, who thereafter made a principal payment of five hundred dollars ($500) in June of 1969, reducing the stated purchase price to twelve thousand five hundred dollars ($12,500); a further payment of three hundred dollars ($300) was made on September 2, 1969.

Six days later, at the suggestion and instance of the defendant, the parties entered into the following written agreements: (a) a purchase agreement with a stated consideration of twelve thousand five hundred dollars ($12,500); (b) a promissory note signed by the plaintiff in the same face amount;

(c) a real estate mortgage upon the premises described in the purchase and sell agreement signed by the parties. The promissory note provided for the payment of twelve thousand five hundred dollars ($12,500), with interest payable quarterly on the then outstanding balance with the first installment payable three months from September 8, 1969, the entire amount to be paid within ten years. The note also contained a clause for the acceleration of payment at the option of the holder upon installment default. Subsequent to these agreements, the plaintiff made no payment until the month of June, 1970, when he paid five hundred and fifty dollars ($550). In December, 1970, by letter addressed to the plaintiff, the defendant sought to terminate the written agreements; he informed the plaintiff that he was exercising his option contained in the note to declare the balance of principal and interest due and payable. The plaintiff offered certain sums to the defendant which he claimed represented the amount then due; these offers were never accepted by the defendant.

In May, 1971, the defendant's attorney informed the plaintiff that his client considered the contract for the Searsburg property ended, and his client was taking possession. The plaintiff has not occupied the lands and buildings in question since May, 1971. During the time in which the plaintiff was in possession, no improvements were made by him. The defendant has not returned any of the monies paid by the plaintiff.

By a civil action in the Bennington County Court, the plaintiff requested specific performance of the oral agreement, claiming that by its terms after the initial down payment of one thousand dollars ($1,000), he was to pay only such sums as he could on principal without interest for a period of three years and the balance as he was able with interest at five per cent (5%) until the total purchase price was paid. The defendant, by answer, claimed the oral agreement as stated by the plaintiff in his complaint to be substantially correct, but alleged that it had been superseded by the written agreements. He further requested the court to terminate the written contract and by order deliver the possession of the premises to him free and clear of all claims by the plaintiff.

The court, exercising its equity powers, found the oral contract to be as claimed by the plaintiff and decreed specific performance. It also, in its judgment order, declared the written agreements to be null and void as an attempted novation. The defendant appeals.

The evidence upon which the court was required to make a decision consisted of the testimony of the plaintiff and defendant and the written instruments. The written purchase and sell agreement, the promissory note, and the real estate mortgage, given by the plaintiff upon lands to which he held no deed of conveyance, came into being some ten to eleven months after the defendant had given possession to the plaintiff of lands to which he held record title. The evidence surrounding the execution and exchange of the written agreement shows beyond dispute that the defendant requested his attorney to prepare the documents. They were executed by the plaintiff in the state of New York at the defendant's request; the defendant testified that he had the documents prepared for the protection of himself and the protection of the plaintiff. The only question raised by the plaintiff at the time the written agreements were executed related to the rate of interest, which he thought was to be at the rate of five per cent (5%). This was discussed, and the defendant gave his reason for requiring six per cent (6%); namely, to assure himself of an interest return equal to that paid on savings accounts. The plaintiff makes no claim of being fraudulently induced into signing the agreements.

█ █ The note required no set monthly or yearly payments of principal, nor did the written purchase and sell agreement; except that payment in full was to be made within a ten-year period. The effect of these agreements was to make mutually enforceable that which, prior to that time, had been unenforceable because of the statute of frauds, 12 V.S.A. § 181; *Couture* v. *Lowery*, 122 Vt. 239, 243, 168 A.2d 295 (1961). The statute establishes a rule of evidence regarding parol testimony and does not make oral contracts illegal or void *per se. Taplin* v. *Hinckley Fibre Co.*, 97 Vt. 184, 122 A. 426 (1923).

A review of the evidence indicates without dispute that the defendant at the time the oral agreement was entered into,

which he does not deny, intended to convey title to the plaintiff. The only real disagreement between the parties at any time was as to the method of payment, the rate of interest and how it would accrue.

■■ The written purchase and sell agreement was an executory contract which left the legal estate in the vendor; but, except for his interest in the property as security, the defendant held title in trust for the plaintiff, whom equity regards as the owner. *Baker* v. *Rushford and Rushford*, 91 Vt. 495, 101 A. 769 (1917). In equity, however, the contract for sale and purchase as we have here is regarded as executed and operating to transfer the estate from the vendor to the vendee just according to the intention of the parties. *Dutton* v. *Davis*, 103 Vt. 450, 452, 156 A. 531 (1931).

■ The intention of the parties is further confirmed by their acts and conduct and must be viewed in that light as equity always seeks to carry out their intention if it is possible to do so. Counsel for the defendant admits in argument that the consideration recited in the written instruments is the principal balance then due and owing as of September 8, 1969. This confirms the purchase price of the oral agreement and credits the sum of fifteen hundred dollars ($1,500) previously paid under the oral agreement. On September 2, 1969, the plaintiff had made another payment, the receipt of which is acknowledged by the defendant; apparently this payment was credited upon interest which the plaintiff claims to have been due under the unsecured oral contract.

■ The written purchase and sell agreement contained no provision relating to the time when a deed of conveyance would be given; the promissory note became secured by the real estate mortgage, creating a debt from the mortgagor, the plaintiff, to the defendant, the mortgagee, in the amount stated. More significantly, by accepting the mortgage with knowledge that it covered property which he claimed to own, the defendant became estopped from contesting the mortgagor's title; see 31 C.J.S. *Estoppel,* at 305.

■ It appears abundantly clear that the parties, by entering into the written agreements, carried out their primary

intention; namely, the transfer of title to the plaintiff with security for the purchase price debt to the defendant.

■ As a result of the written agreements, the plaintiff acquired title, at least in equity, to the real estate in question subject to defeasance by nonpayment of the indebtedness secured by the mortgage. The acquiring of title, which as of September 8, 1969, was shaky at best, and the acceptance of security by the defendant, taken together with the recitals of consideration stated in the agreements, furnished sufficient consideration for these instruments. The written agreements of September 8, 1969, superseded the oral agreement of November, 1968.

■ The granting of specific performance of tne oral contract is based solely upon a finding of possession and part payment of the purchase price. We cannot say, under the circumstances disclosed by the evidence, that the possession of the type of property involved here coupled with a fractional payment of the total purchase price is such part performance as would take the oral contract out of the statute of frauds. Further, there is no proof or finding of the elements essential to the intervention of a court of equity. See *Towsley* v. *Champlain Oil Company*, 127 Vt. 541, 543, 254 A.2d 440 (1969); *Cooley* v. *Hatch*, 91 Vt. 128, 99 A. 784 (1917).

■ The defendant in effect claims that the written agreements were rescinded, although he has not returned or offered to return the consideration paid by the plaintiff. For this reason alone, his contention must fail. *Cooley* v. *Hatch*, 97 Vt. 484, 124 A. 589 (1924); see also *Hammond* v. *Buckmaster*, 22 Vt. 375 (1850).

We hold that the written agreements of the parties executed on September 8, 1969, in equity amount to a conveyance of the real estate in question, so as to place at least equitable title in the plaintiff subject to the real estate mortgage. At the time of the plaintiff's action, such equity had not been foreclosed and is still present. The court erred in granting specific performance and in declaring the written instruments null and void. For these reasons, the cause must be reversed.

The state of the evidence in the record relative to the amount due, default in payment, the present possession of the

premises, and the remedies available to each party in law or equity, deter us from making a final entry here. As the cause must be reheard, the parties should be permitted to amend their pleadings and pursue such legal or equitable remedies as they may deem appropriate in the light of this opinion.

*Judgment reversed and cause remanded.*