**Eugene O. and Georgianna C. Chomicky v. Edward and Barbara Buttolph**

[513 A.2d 1174]

No. 84-434

Present: **Hill, Peck, Gibson and Hayes, JJ., and Barney, C.J. (Ret.), Specially Assigned**

Opinion Filed May 16, 1986

*Ketcham & Jackson*, Middlebury, for Plaintiffs-Appellees.

*Mark L. Sperry* and *Susan M. Murray* of *Langrock Sperry Parker & Wool*, Middlebury, for Defendants-Appellants.

**Hill, J.** Defendants, Edward and Barbara Buttolph, appeal from the lower court's order granting specific performance of an alleged oral agreement for the sale of property. Plaintiffs, Eugene and Georgianna Chomicky, cross-appeal the denial of their damage claim. We reverse the court's decree of specific performance on the basis that this dispute is properly resolved under the Statute of Frauds, and affirm the denial of plaintiffs' claim for damages.

Defendants are landowners of lakeside property on Lake Dunmore. Their property is divided by a road. Intending to retain title to the undeveloped back lot together with a 50-foot strip leading to the lake, defendants offered the front lakeside lot and summer cottage for sale.

Plaintiffs inspected the property, and entered into negotiations with defendants. The parties eventually reached an understanding, and plaintiffs' attorney drew up a purchase and sale contract that reflected the terms of their agreement. Both parties signed the contract in August, 1985; the closing was to occur in mid-October. The contract, however, was made contingent on the defendants obtaining a subdivision permit from the Leicester Planning Commission.

While defendants' subdivision petition was pending, plaintiff Eugene Chomicky telephoned defendants to discuss an alternative that would allow them to proceed with the sale in the event that the permit was denied. Plaintiff proposed that defendants retain an easement granting them a 50-foot right-of-way in lieu of outright ownership. Mr. Buttolph told Mr. Chomicky that they had considered that option, but that his wife was opposed to it. He agreed to discuss it with her again.

On October 1, Mr. Buttolph called the plaintiffs, and indicated that the right-of-way arrangement previously discussed was ac-

ceptable in the event that the Leicester Planning Commission did not approve their subdivision permit.

The Commission met on October 12, 1985, and denied defendants' permit application. On October 13, defendants called plaintiffs and advised them that "the deal was off." They now wanted to sell the whole parcel or nothing. Plaintiffs sued for specific performance on the oral contract allegedly concluded over the phone.

■ A contract involving the sale of land or interests therein is controlled by the Statute of Frauds. See 12 V.S.A. § 181(5). As a general rule, such contracts must be in writing to be enforceable. See *Couture* v. *Lowery*, 122 Vt. 239, 243, 168 A.2d 295, 298 (1961). Moreover, any proposed changes or modifications "are subjected to the same requirements of form as the original provisions." *Evarts* v. *Forte*, 135 Vt. 306, 311, 376 A.2d 766, 769 (1977).

■ According to plaintiffs, defendants have admitted to the existence of the oral contract in question, and are thus precluded from setting up the Statute of Frauds as a defense to this action. Plaintiffs cite a footnote in *Bryant* v. *Strong*, 141 Vt. 244, 245 n.1, 448 A.2d 142, 143 n.1 (1982), as controlling precedent on this issue. Even if we accept plaintiffs' characterization of the facts, a characterization which is very much contested by the defendants, we do not believe that such an admission takes the contract outside the Statute of Frauds.

First, the statement relied on by plaintiffs is dicta. The Court in *Bryant* ruled that the plaintiff, not being a party to the contract, had no standing to challenge its validity. *Bryant, supra,* 141 Vt. at 245 n.1, 448 A.2d at 143 n.1. Thus, it had no occasion to pass on the validity of the underlying oral contract granting a would-be purchaser a right of first refusal.

Second, while the writing requirement is imposed primarily as a shield against possible fraud, see *Couture, supra,* 122 Vt. at 243, 168 A.2d at 298, it also "promotes deliberation, seriousness, certainty, and shows that the act was a genuine act of volition." Rabel, *The Statute of Frauds and Comparative Legal History,* 63 L.Q. Rev. 174, 178 (1947). In short, it helps to ensure that contracts for the sale of land or interests therein are not entered into improvidently. Thus, in *Couture, supra,* 122 Vt. at 243, 168 A.2d at 298, we expressly stated that "[o]ne may admit the sale of land by a verbal contract, and yet defend an action for specific performance by pleading the statute." See also *Radke* v. *Brenon,* 271 Minn. 35, 37-38, 134 N.W.2d 887, 889-90 (1965) (fact that defend-

ant admits parol contract sued upon does not preclude him from setting up and insisting upon the Statute of Frauds as a defense to the action).

A party can certainly waive the benefit of the statute, *Couture, supra,* 122 Vt. at 243, 168 A.2d at 298 (citations omitted);. however, we have no occasion to address this issue here as defendants specifically pleaded the Statute of Frauds as an affirmative defense to plaintiffs' complaint.

Plaintiffs' contention that this Court specifically enforced an oral agreement to convey real property in *Troy* v. *Hanifin,* 132 Vt. 76, 315 A.2d 875 (1974), is without merit. In fact, the Court in *Troy* reversed the lower court's ruling to that effect, and held that the written agreements executed by both parties vested equitable title in the plaintiff subject to a mortgage. *Id.* at 82, 315 A.2d at 879.

"The validation of an oral contract to convey real estate in spite of the prohibition against enforcement of the Statute of Frauds depends on the doctrine of part performance." *Jasmin* v. *Alberico,* 135 Vt. 287, 289, 376 A.2d 32, 33 (1977). The doctrine of part performance, as we have repeatedly stated, is invoked to give relief to those who substantially and irretrievably change their position in reliance on the oral agreement. *Id.* at 290, 376 A.2d at 34 (citing *Towsley* v. *Champlain Oil Co.,* 127 Vt. 541, 543, 254 A.2d 440, 442 (1969)). Moreover, we have consistently held that the reliance must be something beyond injury compensable by money to warrant taking the contract outside the statute. *Id.* at 289-90, 376 A.2d at 33 (citing *Troy, supra,* 132 Vt. at 82, 315 A.2d at 879; *Cooley* v. *Hatch,* 91 Vt. 128, 133, 99 A. 784, 786 (1917)).*

Plaintiffs contend that the doctrine of part performance was properly invoked as they made financing arrangements, and conducted a title search in preparation for closing. "[A]ctivities in preparation for [a] proposed transfer of title . . . , though per-

---

* The lower court in this case analyzed the problem in terms of promissory estoppel. It found that the defendants induced plaintiffs to rely to their detriment, and concluded that injustice could be avoided only by enforcement. The flaw in this analysis is that the doctrine of promissory estoppel is applicable only where there is no agreement, where the promise is gratuitous, and there is unbargained-for reliance. See *Overlock* v. *Central Vermont Public Service Corp.,* 126 Vt. 549, 552-53, 237 A.2d 356, 358-59 (1967). In this case, it is undisputed that the parties made an oral agreement, and it is that agreement that is being sued upon.

haps troublesome, belong to that class of responsibilities that fall into the lot of any prospective seller [or purchaser] of real estate, and are not . . . the kind of imposition supporting the equitable relief sought." *Towsley, supra,* 127 Vt. at 543-44, 254 A.2d at 442.

Plaintiffs also claim that their $5,000 downpayment constitutes sufficient reliance to warrant the granting of specific performance. This claim merits little or no comment as we have repeatedly emphasized that "money payments on the purchase are not enough to give the oral agreement enforceable status, even coupled with possession, in the face of the Statute of Frauds." *Jasmin, supra,* 135 Vt. at 290, 376 A.2d at 34; see also *Troy, supra,* 132 Vt. at 82, 315 A.2d at 879 (simple possession coupled with fractional payment of total purchase price is not such part performance as would take the oral contract outside the statute). The equities are even less compelling in this case than in the two cases just cited as plaintiffs never entered into possession or made improvements on the property.

Plaintiffs claim that they gave up other opportunities to acquire lakeside property in reliance on their oral agreement with defendants. This claim, however, cannot support an award of specific performance, as plaintiffs produced no evidence showing (1) that other properties were available, or (2) how they were precluded from pursuing such opportunities.

■ We come finally to the question of damages. Although a court has the power to award damages incident to a decree of specific performance, defendants correctly point out that "[t]he compensation awarded . . . is more like an accounting . . . than like an assessment of damages." *Ellis* v. *Mihelis,* 60 Cal. 2d 206, 219-20, 384 P.2d 7, 15, 32 Cal. Rptr. 415, 423 (1963). "The complainant affirms the contract as being still in force and asks that it be performed. If the court orders it to be performed, the decree should as nearly as possibly require performance in accordance with its terms." *Id.;* see also *Eliason* v. *Watts,* 615 P.2d 427, 430-31 (Utah 1980). Plaintiffs here, not being entitled to a decree of specific performance, are not entitled to an award of damages incident thereto.

*Judgment reversed as to court's decree of specific performance; judgment affirmed as to court's denial of plaintiffs' claim for damages.*