HEATHCOTE ASSOCIATES, a Limited
Partnership, Plaintiff,

v.

CHITTENDEN TRUST COMPANY, d/b/a
The Chittenden Bank, Defendant.

No. 2:96–CV–128.

United States District Court,
D. Vermont.

Jan. 29, 1997.

Michael B. Rosenberg, Robert Alan Pinèl, Miller, Eggleston & Cramer, Ltd., Burlington, VT, for plaintiff.

Robert B. Hemley, Craig Weatherly, Gravel & Shea, Burlington, VT, for defendant.

## OPINION AND ORDER

SESSIONS, District Judge.

This is an action in diversity arising out of a contract dispute between Plaintiff Heathcote Associates ("Heathcote") and Defendant Chittenden Trust Company ("Chittenden"). Heathcote seeks specific performance as well as damages for Chittenden's alleged breach of contract. Heathcote has also alleged claims of failure to deal in good faith under the contract, fraud, and promissory estoppel. Pending before the Court is Chittenden's Motion to Dismiss, which Heathcote opposes. For the reasons stated below, the Motion is GRANTED in part and DENIED in part.

## I. Factual Background

For the purposes of this motion, the Court assumes the following facts to be true. Plaintiff Heathcote is a limited partnership registered in the State of New York with its principal place of business in New York City, New York. No members of the partnership are residents of the State of Vermont. Defendant Chittenden is a banking corporation organized under the laws of the State of Vermont and does business under the name "The Chittenden Bank." Its principal place of business is in Burlington, Vermont.

Heathcote owns improved property known as "Mall 189" ("the Mall") (formerly known as "The South Burlington Outlet Center") in South Burlington, Vermont. Chittenden operates a branch banking facility in a building at the Mall that it leases from Heathcote, pursuant to a lease agreement dated April 1, 1991 ("Lease Agreement"). The building is separate from but adjacent to the main building of the Mall.

Attached to the Lease Agreement is a rider ("Rider"), executed the same day as the Lease Agreement. Paragraph 3 of the Rider modifies the obligations of the parties under the Lease Agreement if Chittenden provides an alternative design for a two-lane drive-thru that is acceptable to Heathcote and that is approved by the City of South Burlington. The Rider requires Heathcote to cooperate with Chittenden in signing any documents necessary for Chittenden to obtain approval from South Burlington. Once approval is secured, the Rider modifies the duration and rent of the tenancy specified in the Lease Agreement.

In February, 1992, the parties signed a document entitled "Lease Proposal." (Paper No. 7, Ex. A) The Lease Proposal describes a twenty-five year lease, to be entered into by Chittenden, of a building to be constructed at the northerly side of the Mall for use as a branch banking facility. The Lease Proposal states that the building is to be "approx. as shown" on a plan attached to the document and labeled as " 'A' dated 2/18/92." ("Exhibit A Plan"). It specifies a rent schedule, financing, mall access, rent commence-

ment, and additional charges, and requires that approval from the City of South Burlington be obtained for the proposed bank facility. Finally, the Lease Proposal states, "The above shall be subject to a mutually satisfactory lease agreement and all necessary approvals by the Town of South Burlington." Amendment to Complaint, Ex. A (Paper No. 2, Ex. A).

The Exhibit A Plan was submitted for approval to the City of South Burlington, but was subsequently withdrawn when the City informally advised the parties that the design would not be approved. The parties then agreed to modify the design to incorporate teller windows and an automatic teller machine (ATM) into the existing Chittenden bank rather than into a new structure. Both this proposal and the Exhibit A Plan were designed by the same engineering firm.

The City of South Burlington formally rejected the new design and the request for a zoning variance. With Chittenden's support and encouragement, Heathcote appealed the City's decision in Vermont Superior Court. Heathcote bore the costs of this appeal. On July 18, 1995, the Chittenden Superior Court granted a zoning variance and approved the design for the banking facility that the City of South Burlington had formally rejected. Heathcote incurred approximately $100,000 in costs in redesigning the facility and obtaining the variance for it.

On or about October 12, 1995, Chittenden wrote Heathcote and informed it that "Chittenden Bank can't enter into a 25 year, single term, lease" and that Chittenden had "decided to not accept your drive-up lane proposal and will stay with our current lease." Bishop Letter (Paper No. 7, Ex. C). Heathcote subsequently filed this lawsuit, alleging five counts against Chittenden: specific performance of a contract; damages for breach of contract; breach of implied covenant of good faith and fair dealing; fraud; and promissory estoppel.

On June 5, 1996, Chittenden moved to dismiss the Complaint, pursuant to Fed. R.Civ.P. 12(b)(6), for failure to state a claim on which relief can be granted. Heathcote opposes this motion. Argument was heard on the matter at a hearing on August 6, 1996.

## II. Discussion

### A. Standard of Review Under Rule 12(b)(6)

On a motion to dismiss pursuant to Fed. R.Civ.P. 12(b)(6), the Court is to consider the legal sufficiency of the claim as stated in the complaint, and is not to weigh facts underlying the claim or the merits of the case. *Goldman v. Belden,* 754 F.2d 1059, 1067 (2d Cir.1985); 5A C. Wright and A. Miller, Federal Practice & Procedure § 1356 (1990). The complaint must not be dismissed "unless it appears 'beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" *Goldman,* 754 F.2d at 1065 (quoting *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957)). The complaint must be read with "great generosity." *Yoder v. Orthomolecular Nutrition Institute, Inc.,* 751 F.2d 555, 558 (2d Cir.1985) (citing *Conley,* 355 U.S. at 47–48, 78 S.Ct. 99, 102–03). Taking Plaintiff's allegations as true, the Court must construe the Complaint in the light most favorable to the Plaintiff, and must draw all inferences in Plaintiff's favor. *Cosmas v. Hassett,* 886 F.2d 8, 11 (2d Cir. 1989); *Yoder,* 751 F.2d at 562.

[1] In general, the Court may only consider facts alleged on the face of the complaint, and any documents attached as exhibits or incorporated by reference. *Cosmas,* 886 F.2d at 13. If the Court considers matters outside the pleading, such as affidavits, depositions, or answers to interrogatories, the motion is to be treated as a Rule 56 motion for summary judgment, and the parties are to be given notice and the opportunity to present additional materials. Fed. R.Civ.P. 12(b); *Carter v. Stanton,* 405 U.S. 669, 671, 92 S.Ct. 1232, 1234, 31 L.Ed.2d 569 (1972) (per curiam) (holding treatment of such motions as Rule 56 summary judgment motions mandatory).

Despite this general framework, the Second Circuit has in recent years permitted District Courts ruling on 12(b)(6) motions to consider written instruments outside the four corners of the complaint when the plaintiff's claims rely on such instruments and the op-

posing party has notice of them. *See Cortec Industries, Inc. v. Sum Holding L.P.,* 949 F.2d 42, 48 (2d Cir.1991) (permitting consideration of warrant, offering memorandum, and stock purchase agreement because they were documents that plaintiff "had either in its possession or had knowledge of and upon which they relied in bringing suit"), *cert. denied,* 503 U.S. 960, 112 S.Ct. 1561, 118 L.Ed.2d 208 (1992); *Sazerac Co. v. Falk,* 861 F.Supp. 253, 257 (S.D.N.Y.1994) (considering instruments supplied by defendants in their 12(b)(6) motion but not attached to complaint); *Kramer v. Time Warner Inc.,* 937 F.2d 767, 773–74 (2d. Cir.1991) (publicly filed securities documents of which plaintiff had notice). Moreover, documents that are "integral" to the complaint, but are only partially quoted therein, may also be considered. *San Leandro Emergency Med. Group Profit Sharing Plan v. Philip Morris Cos.,* 75 F.3d 801, 808–09 (2d Cir.1996); *Harsco v. Segui,* 91 F.3d 337, 341 (2d Cir.1996) (reviewing letter cited and discussed in complaint, but not attached thereto); *I. Meyer Pincus & Assocs. v. Oppenheimer & Co.,* 936 F.2d 759, 762 (2d Cir.1991) (reviewing prospectus). If factual allegations contained in such documents contradict allegations in the complaint, the document controls. *See Feick v. Fleener,* 653 F.2d 69, 75 (2d Cir.1981); *United States ex rel. Sommer v. Dixon,* 524 F.Supp. 83, 85 (N.D.N.Y.1981), *aff'd,* 709 F.2d 173 (2d Cir.) (per curiam), *cert. denied,* 464 U.S. 857, 104 S.Ct. 177, 78 L.Ed.2d 158 (1983); *Falk,* 861 F.Supp. at 257.

In the present case, the Court looks beyond the four corners of the Complaint, but still addresses Defendant's motion under 12(b)(6) rather than Rule 56. The factual allegations considered by the Court are taken from Plaintiff's Complaint, and are assumed to be true only for the purposes of this motion. In addition, the Court considers the Lease Proposal, which was attached to the Amended Complaint as an exhibit thereto, as well as the Lease Agreement, the Rider, and Chittenden's letter of October 12, 1995. These latter three documents were not attached to the Complaint or incorporated by reference, but were instead submitted by Plaintiff Heathcote as attachments to its memorandum opposing Defendant's motion to dismiss. However, the documents are integral to the Complaint and the claims alleged therein, and Defendant Chittenden had notice of them and the opportunity to respond to them. The Court also takes judicial notice of the decision and order of the Chittenden Superior Court granting Heathcote a zoning variance. This is a publicly filed document of which Chittenden had notice, and a copy of which was submitted by Heathcote. All of these documents may be properly considered on the 12(b)(6) motion, despite the fact that they fall outside the Complaint. However, factual allegations contained in memoranda submitted by the parties subsequent to the Complaint are disregarded.

## B. Specific Performance

■ Heathcote's first count is for specific performance. Specific performance is an equitable remedy which is ordinarily available only where the right to relief is clear and remedy at law is inadequate. *Campbell Inns, Inc. v. Banholzer, Turnure & Co.,* 148 Vt. 1, 527 A.2d 1142 (1987). Under Vermont law, "[i]n order to grant specific performance of a contract, there must be a valid contract … and its terms must be specific and distinct and leave no reasonable doubt of meaning." *Reynolds v. Sullivan,* 136 Vt. 1, 3–4, 383 A.2d 609 (1978). The granting of specific performance is not a matter of right, but instead rests in the discretion of the court. *Davis v. Hodgdon,* 133 Vt. 49, 329 A.2d 669 (1974).

The party seeking specific performance bears the burden of first demonstrating the existence of an enforceable contract, *Reynolds,* 136 Vt. at 3, 383 A.2d 609; *Jasmin v. Alberico,* 135 Vt. 287, 376 A.2d 32 (1977), and second, demonstrating the inadequacy of money damages. *Gerety v. Poitras,* 126 Vt. 153, 155, 224 A.2d 919 (1966). The Court considers Plaintiff's arguments as to the existence of a contract below. However, assuming, *arguendo,* that Heathcote has sufficiently demonstrated the existence of an enforceable contract, it has failed to show the inadequacy of a remedy at law.

Heathcote alleges that the teller windows to be constructed under the Lease Proposal were designed specifically for Chittenden, and that the approval for the design that Heathcote ultimately obtained is of no value to Heathcote. Complaint at ¶ 18. Among the injuries alleged to be suffered by Heathcote are: the loss of the $100,000 it expended in redesigning and gaining approval of the banking facility; loss of expected income from a twenty-five year lease, at an increased rent; difficulty in obtaining a new tenant for the facility when Chittenden's lease expires; and delay and cost in modifying the facility for a future tenant.[1] However, each of these injuries is fully compensable by money damages. While the loss of future income inherently involves some speculation, it is not enough to establish the inadequacy of a legal remedy. Accordingly, Count One of the Complaint is dismissed.

### C. Damages for Breach of Contract

Heathcote next argues that it is entitled to damages for injuries suffered as a result of Chittenden's breach of contract. Of course, this argument depends on the existence of an enforceable contract in the first place, a matter which Chittenden disputes.

■ Heathcote contends that the Lease Proposal was an enforceable contract according to which Chittenden was obligated to enter into a twenty-five year lease with Heathcote. According to Heathcote, the Lease Proposal modifies the terms of the Lease Agreement by merging with the Rider. In response, Chittenden contends that the Lease Proposal was nothing more than an agreement to negotiate a lease in the future, and that Chittenden was excused from performance under the agreement because conditions precedent contained in the instrument were not met. Specifically, the Lease Proposal states that the terms of the instrument "shall be subject to [1] a mutually satisfactory lease agreement and [2] all necessary approvals by the Town of South Burlington." Amendment to Complaint, Ex. A (Paper No. 2, Ex. A). Moreover, Chittenden argues that any agreement between the parties was only oral and was therefore violative of the Statute of Frauds.

Based on the facts alleged by Heathcote, a jury could reasonably find that the Lease Proposal is an enforceable contract. While the Lease Proposal might be read, as Chittenden advocates, as merely an agreement to enter into further negotiations, the Court cannot conclude "beyond doubt that the plaintiff can prove no set of facts in support of [its] claim which would entitle [it] to relief." Conley v. Gibson, 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957). To the contrary, Heathcote may be able to produce sufficient evidence clarifying the meaning of certain terms of the instrument, including the language labeled by Chittenden as conditions precedent, and thereby demonstrate that it is in fact a modification of the Lease Agreement. Assuming such additional facts are produced, the Lease Proposal would constitute a valid modification of the Lease Agreement, in writing and signed by the party to be charged, in compliance with the Statute of Frauds. See Vt.Stat.Ann. tit. 12 § 181 (Supp.1996).

■ Chittenden has suggested that even if the Lease Proposal constituted an enforceable contract, the Lease Proposal itself was modified orally. Although the Lease Proposal calls for the construction of a new building, the approval obtained by Heathcote was for a modification of the building currently leased by Chittenden. While Heathcote claims that Chittenden agreed to the new design plan, Chittenden argues that any such agreement was never reduced to writing and therefore violates the Statute of Frauds. See North v. Simonini, 142 Vt. 482, 485, 457 A.2d 285 (1983) (holding that modifications to contracts covered by Statute of Frauds are governed by same requirements as original contract); Evarts v. Forte, 135 Vt. 306, 311, 376 A.2d 766 (1977) (same). Heathcote advances two arguments in opposition to Chittenden's position: first, Heathcote suggests that the exact specifications of the banking facility were not material to the contract; and second, it argues that even if it were material,

---

1. While this catalogue of injuries is not enumerated in the Complaint, Heathcote argues that each injury is reasonably inferred from the Complaint. The Court agrees.

the parties' oral agreement regarding modification of the facility was outside the Statute of Frauds because in obtaining approval for the alternate design, Heathcote partially performed the oral contract. *See Bassler v. Bassler,* 156 Vt. 353, 358, 593 A.2d 82 (1991) ("under the doctrine of part performance, an oral agreement may be removed from the Statute of Frauds and enforced when the party claiming an agreement can show that, in reliance on the agreement, he or she suffered a substantial and irretrievable change in position."); *Chomicky v. Buttolph,* 147 Vt. 128, 131, 513 A.2d 1174 (1986) (same).

Again, Heathcote may be able to prove either that the specifications of the banking facility were not material to the Lease Proposal, or that it had partially performed on an oral contract. Heathcote's claim is therefore legally sufficient, and Defendant's motion to dismiss Count Two of the Complaint is denied.

### D. Breach of Implied Covenant of Good Faith and Fair Dealing

█ In Count Three of the Complaint, Heathcote alleges that Chittenden's actions breached the implied covenant of good faith and fair dealing under Vermont law. Chittenden counters that although the covenant is, as a matter of Vermont law, implied in every contract, *see Shaw v. E.I. DuPont de Nemours & Co.,* 126 Vt. 206, 209, 226 A.2d 903 (1966), it does not provide a cause of action in the absence of an enforceable contract. *McHugh v. University of Vermont,* 758 F.Supp. 945, 953 (D.Vt.1991), *aff'd,* 966 F.2d 67 (2d Cir.1992). Chittenden's argument is therefore premised on the contention that an enforceable contract between the parties does not exist. Because the Court has determined that a contract may in fact exist and that the Plaintiff's contract claim thus survives the motion to dismiss, so, too,

must the claim of breach of the implied covenant. As such, Defendant's motion to dismiss Count Three of the Complaint is denied.

### E. Fraud

█ The dispute about Count Four, Fraud, concerns the adequacy of Plaintiff's pleading in light of Fed.R.Civ.P. 9(b). Rule 9(b) provides in pertinent part, "In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." This heightened pleading requirement serves four purposes: "(1) to provide a defendant with fair notice of plaintiff's claim, (2) to safeguard a defendant's reputation from 'improvident charges of wrongdoing' and (3) to protect against the institution of a strike suit." *Harsco Corp. v. Segui,* 91 F.3d 337, 347 (2d Cir.1996) (citing *Acito v. IMCERA Group, Inc.,* 47 F.3d 47, 52 (2d Cir.1995)). In order to meet the particularity requirement, the complaint must "(1) detail the statements (or omissions) that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements (or omissions) were made, and (4) explain why the statements (or omissions) are fraudulent." *Id.* (citing *Shields v. Citytrust Bancorp, Inc.,* 25 F.3d 1124, 1128 (2d Cir.1994); *Ouaknine v. MacFarlane,* 897 F.2d 75, 79 (2d Cir.1990)).

Heathcote's Complaint fails to meet these requirements. The matter alleged to be fraudulent is Chittenden's statement, in a letter sent to Heathcote, that Chittenden "can't enter into a 25 year, single term, lease." Heathcote quotes from this letter, identifies the speaker as Chittenden, and indicates the date of the communication. However, Heathcote fails to explain how the statement is fraudulent. In its memorandum opposing Chittenden's motion to dismiss, Heathcote posits the basis of its fraud claim.[2] However, as discussed above, the Court will

---

2. Heathcote states:

Chittenden's statement that it "can't" enter into a twenty five year lease directly contradicts the February, 1992 Amendment [Lease Proposal] where Chittenden agreed to enter into a twenty five (25) year lease. This absolute contradiction forms the basis for Heathcote's fraud claim against Chittenden. If, in 1995, Chittenden could not enter into a twenty five year lease, it knew it could not do so in

1992. As such, in 1992 Chittenden knew it had no intention of entering into a twenty five year lease despite its representation to Heathcote that it would. That misrepresentation is the essence of an intentional misrepresentation of existing fact, because Chittenden presently intended to act differently in the future.

Opposition to Defendant's Motion to Dismiss at 33 (Paper No. 7).

not consider factual allegations contained in memoranda submitted by the parties subsequent to the Complaint. The fraud claim is therefore inadequately pleaded.

The Court dismisses Count Four of the Complaint, but with leave to amend. Leave to amend is particularly appropriate when a complaint is dismissed under Rule 9(b), *Luce v. Edelstein,* 802 F.2d 49, 56 (2d Cir.1986), and is generally denied only when, unlike in this case, the plaintiff has been given prior opportunity to replead the fraud claim with greater specificity. *De Jesus v. Sears, Roebuck & Co.,* 87 F.3d 65, 71–72 (2d Cir.), *cert. denied,* —— U.S. ——, 117 S.Ct. 509, 136 L.Ed.2d 399 (1996); *Devaney v. Chester,* 813 F.2d 566, 569 (2d Cir.1987). Granting leave to replead in this case also comports with Fed.R.Civ.P. 15(a), which provides that leave to amend "shall be freely given when justice so requires."

### F. Promissory Estoppel

■ Heathcote's last claim is for promissory estoppel. As an alternative to its argument that the Lease Proposal constitutes an enforceable contract, Heathcote claims that the Lease Proposal embodies a promise made by Chittenden to enter into a twenty-five year lease, and that this promise induced Heathcote's justifiable and detrimental reliance, thereby giving rise to a remedy under promissory estoppel.

Promissory estoppel is an equitable doctrine designed "to prevent 'injustice and unconscionable advantage' where an exchange of promises did not create a binding contract." *Big G Corp. v. Henry,* 148 Vt. 589, 594, 536 A.2d 559 (1987) (quoting *Overlock v. Central Vermont Pub. Serv. Corp.,* 126 Vt. 549, 552–53, 237 A.2d 356 (1967)). Vermont law follows the Restatement Second formulation of the doctrine, *Foote v. Simmonds Precision Products Co.,* 158 Vt. 566, 573, 613 A.2d 1277 (1992), which provides that "[a] promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee or a third person and which does induce such action or forbearance is binding if injustice can be avoided only be enforcement of the promise." Restatement (Second) of Contracts § 90 (1981).

Promissory estoppel applies "only where there is no agreement, where the promise is gratuitous, and there is unbargained-for-reliance." *Chomicky v. Buttolph,* 147 Vt. 128, 131 n., 513 A.2d 1174 (1986); *see also Big G,* 148 Vt. at 594, 536 A.2d 559.

Heathcote has pled its promissory estoppel claim sufficiently to withstand Chittenden's motion to dismiss. While it is unclear, on the face of the Lease Proposal, whether the instrument contains a gratuitous promise or whether any resulting reliance was unbargained for, these are fact-laden issues which cannot be resolved without further development of the record. Additional discovery might well produce a sufficient factual basis for Heathcote to succeed on its promissory estoppel claim. Therefore, Defendant's motion to dismiss Count Five of the Complaint is denied.

### III. Conclusion

Based on the foregoing analysis, Defendant's Motion to Dismiss (Paper No. 5) is hereby GRANTED in part and DENIED in part.