924 A.2d 72 (2007)
2007 VT 25
Jerome RAPPAPORT
v.
Estate of Laura F. BANFIELD, By and Through Its Executrix Laura B. Hoguet and Duane Wells.
No. 05-399.
Supreme Court of Vermont.
April 6, 2007.
*73 Matthew I. Katz, J.
Michael Marks of Tarrant, Marks & Gillies, Montpelier, for Plaintiff-Appellant.
L. Brooke Dingledine of Valsangiacomo, Detora & McQuesten, P.C., for Defendant-Appellee Banfield.
Bernard D. Lambek of Zalinger Cameron & Lambek, P.C., Montpelier, for Defendant-Appellee.
*74 Present: REIBER, C.J., JOHNSON and SKOGLUND, JJ., WESLEY, Supr. J., and ALLEN, C.J. (Ret.), Specially Assigned.
ALLEN, C.J. (Ret.), Specially Assigned.
¶ 1. Plaintiff Jerome Rappaport appeals from the trial court's order granting summary judgment to defendants Estate of Laura F. Banfield and Duane Wells in this dispute involving a right of first refusal. Plaintiff maintains that questions of material fact remain as to whether his right of first refusal was limited to a 25.1-acre parcel, and whether defendants improperly interfered with or violated this right. We affirm.
¶ 2. Plaintiff is a lawyer and land developer who owns a large amount of real property in East Montpelier. In 1970, he purchased real property from a Mr. Knowles and thereby acquired a deeded right of first refusal to purchase, and an agricultural easement in, a 25.1-acre lot owned by Edward and Laura Banfield. The Banfields owned several contiguous lots in East Montpelier, including the 25.1-acre lot noted above, an adjacent 2.8-acre parcel, and a 50.4-acre parcel. The Banfield house sat on the 2.8-acre lot, and it had sweeping views across the undeveloped 25.1-acre parcel. Mr. Banfield passed away, and in 2002, Mrs. Banfield decided to sell all of her property. Plaintiff wanted to purchase it and eventually offered Mrs. Banfield $400,000, but this offer was rejected.
¶ 3. Mr. Wells was also interested in purchasing the property, and in November 2002, he submitted two written offers to Mrs. Banfield. He offered $150,000 for the 25.1-acre lot and $275,000 for the remaining acreage and home. Mrs. Banfield found these offers acceptable and notified plaintiff of the impending sale of the 25.1-acre parcel. Plaintiff filed a complaint against defendants, raising a breach of contract claim, and seeking declaratory and injunctive relief, as well as compensatory damages. Plaintiff argued in relevant part that defendants violated his right of first refusal by attempting to limit his right to only 25.1 acres, artificially inflating the price for this lot, and refusing to provide him the sales agreements for both parcels.
¶ 4. In May 2003, after a hearing, the trial court issued a written order enjoining Mrs. Banfield from conveying the 25.1-acre parcel to Mr. Wells for three weeks to allow plaintiff to decide whether to exercise his right of first refusal. The court rejected plaintiff's assertion that it should determine a reasonable price for the 25.1-acre parcel, finding the offer made by Mr. Wells justified by logical and consistent factors. As the court explained, Mr. Wells had valid reasons for making a high bid on the 25.1-acre parcel to prevent plaintiff from acquiring it, including preserving the spectacular views from the house on the larger parcel, keeping the property intact, and controlling the land itself. If plaintiff acquired the lot, the agricultural easement held by plaintiff would be extinguished and the lot could be developed. Because Mr. Wells planned to invest $200,000 to upgrade the Banfield house, it was important to him to prevent the development of the adjoining property. The court found that these and other factors established that the $150,000 offer was reasonable.
¶ 5. Shortly after the court's decision, plaintiff exercised his right of first refusal, and purchased the 25.1-acre lot for $150,000. Mr. Wells purchased the remaining acreage and home. Mr. Wells then moved for summary judgment on the remaining claims in plaintiff's complaint. The court denied the motion, finding it premature as there had not yet been an adequate opportunity to conduct discovery. *75 In December 2004, Mr. Wells renewed the motion, and in July 2005, the court granted summary judgment to defendants.
¶ 6. In reaching its conclusion, the court first examined the scope of plaintiff's right of first refusal. It was undisputed that plaintiff's deeded right applied only to the 25.1-acre lot. Plaintiff claimed, however, that he and the Banfields shared a common understanding that the deeded right applied to all of the Banfield property, including the house. Relying on In re Estate of Gorton, 167 Vt. 357, 361-62, 706 A.2d 947, 950-51 (1997), plaintiff maintained that although this understanding was never reduced to writing, an exception to the Statute of Frauds should apply because he relied on this oral agreement to his detriment.
¶ 7. The trial court rejected this argument, noting first that the facts suggested a mutual misunderstanding about the scope of the deeded right, rather than any separate oral agreement. Even assuming the existence of an oral agreement, however, and assuming that plaintiff reasonably relied on it, the court found that plaintiff failed to show how his reasonable reliance caused him to substantially and irretrievably change his position, a necessary element of his claim. Unlike the plaintiffs in Gorton, the court explained, plaintiff here merely advanced his own disappointment at learning of the more limited scope of his deeded right of first refusal. Moreover, plaintiff did not suggest that he performed any obligations under the supposed agreement, nor did he explain what his obligations were. The court thus found no basis for applying an exception to the Statute of Frauds, and it found the claimed oral agreement unenforceable.
¶ 8. The court turned next to the nature of plaintiff's right. As it explained, plaintiff's deed provided that in the event of the sale of the 25.1-acre lot, plaintiff would have "the first right to purchase said property at the highest price" offered to Mrs. Banfield, within thirty days of notice in writing of any offer to purchase. The court found plaintiff's right triggered by a good-faith offer by a third party that was acceptable to the seller, and it stated that a good-faith offer exists when "the offeror genuinely intends to bind itself to pay the offered price." Uno Rests., Inc. v. Boston Kenmore Realty Corp., 441 Mass. 376, 805 N.E.2d 957, 963 (2004). The court concluded that Mr. Wells made a good-faith offer here.
¶ 9. The court rejected plaintiff's assertion that this was a "package case," i.e., a case where the seller packaged the burdened lot with other property and attempted to sell the larger lot in derogation of the right of first refusal. In this case, the court explained, Mr. Wells made two independent offers, one for the lot burdened by the right of first refusal, and one for the rest of the property. The court found that plaintiff presented no evidence to suggest that Mrs. Banfield or her agents had any role whatsoever in determining the purchase prices that Mr. Wells would offer. Similarly, there was no evidence that either offer was contingent in any way on the other, whether overtly or secretly. Moreover, the offers were made at the same time, and Mrs. Banfield was free to accept one contract and not the other. The court found that the undisputed facts showed a competitive, arms-length transaction by a third party.
¶ 10. The court also rejected plaintiff's assertion that the price Mr. Wells offered for the 25.1-acre parcel was too high and thus designed to unfairly thwart his right of first refusal. It explained that plaintiff never possessed the right to purchase the parcel at an objectively determined fair market value. Instead, he had the right to buy the property at the highest good-faith *76 offer that Mrs. Banfield could inspire from a third party. The court found no evidence suggesting any collusion or other improper effort by defendants to frustrate plaintiff's right of first refusal, and no basis for granting plaintiff any relief. It thus granted judgment to defendants. Plaintiff appealed.
¶ 11. Plaintiff first argues that the court erred in finding as a matter of law that the Statute of Frauds barred the enforcement of his claimed oral agreement with the Banfields. According to plaintiff, there was evidence to show that he reasonably relied on the parties' common understanding to his detriment. He maintains that in 1980 he purchased another parcel of real property from the Banfields in reliance upon this agreement, and he also relied upon this agreement in the course of negotiating to buy the 78-acre parcel at issue in this case.
¶ 12. On review, we apply the same standard used by the trial court. Richart v. Jackson, 171 Vt. 94, 97, 758 A.2d 319, 321 (2000). Summary judgment is appropriate when, taking all allegations made by the nonmoving party as true, there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law. Id.; V.R.C.P. 56(c). The nonmoving party is entitled to the benefit of all reasonable doubts and inferences in determining if a genuine issue exists. Berlin Dev. Assocs. v. Dep't of Soc. Welfare, 142 Vt. 107, 111, 453 A.2d 397, 399 (1982).
¶ 13. The undisputed facts in this case support the trial court's conclusion. As a general rule, a contract involving the sale of land or interests therein "must be in writing to be enforceable." Chomicky v. Buttolph, 147 Vt. 128, 130, 513 A.2d 1174, 1175 (1986); 12 V.S.A. § 181(5). An exception to this rule exists where a party demonstrates that he or she is equitably entitled to the claimed interest in land. Gorton, 167 Vt. at 361-62, 706 A.2d at 950-51. In such cases, "[e]nforcement is justified on the ground that repudiation by one party after the other has fully performed amounts to a virtual fraud." Id. at 361, 706 A.2d at 950; see also Contractor's Crane Serv., Inc. v. Vt. Whey Abatement Auth., 147 Vt. 441, 449, 519 A.2d 1166, 1172 (1986) ("[I]f a party relies on an oral promise, fully performing its end of the bargain, then a written promise is not required if it would be fraud to allow the promisor to deny the contract.").
¶ 14. To fall within this exception, plaintiff needed to show that: (1) there was an oral agreement (2) upon which he reasonably relied (3) by changing his position so that he cannot be returned to his former position, and (4) the other party knew of such reliance. Gorton, 167 Vt. at 362, 706 A.2d at 951; see also Contractor's Crane Serv., Inc., 147 Vt. at 449, 519 A.2d at 1172 (party seeking to enforce an oral agreement must show "that acts of his, done in reliance on the agreement, known to the defendant, so altered the relations of the parties as to prevent restoration to their former condition").
¶ 15. Plaintiff cannot meet this standard. First, as the trial court noted, there does not appear to be a separate and distinct oral agreement regarding the right of first refusal. Instead, viewing the facts in plaintiff's favor, the parties shared a mutual misunderstanding about the scope of the right conveyed in plaintiff's deed. One can legitimately question whether it would be reasonable for plaintiff, a lawyer and land developer, to rely on the Banfields' interpretation of his deed from Mr. Knowles when their alleged interpretation contravened the deed's express provisions.
*77 ¶ 16. The record is also devoid of evidence that plaintiff made a "substantial and irretrievable change in position in reliance on the agreement," or that he "fully performed" any obligations under the alleged agreement. Gorton, 167 Vt. at 361-62, 706 A.2d at 950-51. Plaintiff's assertion that he purchased real property from the Banfields in 1980 in reliance on this understanding does not suffice. Plaintiff fails to persuasively explain how or why this purchase was dependent on his understanding as to the scope of his right of first refusal or how he substantially and irretrievably changed his position in reliance on the alleged agreement. Plaintiff can sell this property at any time and he will be in the same position as he was before he purchased it.
¶ 17. Plaintiff's claim that he relied upon the alleged oral agreement in negotiating to buy the Banfields' 78-acre parcel is similarly insufficient. Even assuming that the oral agreement existed, it would not have given plaintiff the right to buy this parcel absent a bona fide offer from a third party. While plaintiff may now wish that he made a higher offer, his decision to "stop negotiating" left him in the same position that he was in before negotiations began.
¶ 18. This case is not like Gorton, or other cases where we have found a substantial and irretrievable change in position in reliance on an oral agreement sufficient to warrant enforcement of the agreement despite the Statute of Frauds. In Gorton, the plaintiffs alleged that they orally agreed with the defendant that they would receive 88 acres of farmland at defendant's death if they cared for her and her home, and paid rent and taxes for the property until defendant's death. 167 Vt. at 359, 706 A.2d at 949. The plaintiffs argued that they fully performed their obligations under the agreement, and additionally, in reliance upon the agreement, they left their employment to farm and take care of defendant, purchased additional land adjoining the farm, and made improvements to the property. Id. at 363, 706 A.2d at 951. We concluded that, as a matter of law, these facts rose to the level that would allow equity to enforce specific performance. Id.
¶ 19. We have reached similar conclusions in cases with equally compelling facts. See, e.g., Quenneville v. Buttolph, 2003 VT 82, ¶ 19, 175 Vt. 444, 833 A.2d 1263 (oral agreement to sell farm enforceable where, in reliance on agreement, buyers had possession of land, they moved herd of 400 cows from New York to Vermont, made extensive improvements and repairs to farm property, and enrolled disabled son in local school); Bassler v. Bassler, 156 Vt. 353, 359, 593 A.2d 82, 86 (1991) (installing hot water heaters, insulation, new siding, new flooring, new furnace, new windows and frames, excavating and grading road to house, removing barn, building deck and draining and clearing brush around pond sufficient to support trial court decision to take agreement out of Statute of Frauds); Nichols v. Nichols, 139 Vt. 273, 277-78, 427 A.2d 374, 377 (1981) (defendants fully performed under contract for many years by farming family farm, paying all bills and taking care of mother until her death, and, therefore, were entitled to have farm conveyed to them); Laplante v. Eastman, 118 Vt. 220, 223-25, 105 A.2d 265, 268-69 (1954) (evidence supported specific enforcement of oral agreement to convey home to plaintiff where plaintiff fully performed under contract by maintaining home and farms for deceased who had purchased home for plaintiff and given her possession). No reasonable person could conclude in this case, based on the undisputed facts, that there was any reasonable reliance on an *78 alleged oral agreement so as to make the alleged agreement enforceable in equity.
¶ 20. The final case cited by plaintiff, North v. Simonini, 142 Vt. 482, 457 A.2d 285 (1983), is inapposite. In that case, we considered whether the parties to a contract had waived, by their words and conduct, a fourteen-day cancellation period set forth in a written contract. Id. at 485-86, 457 A.2d at 287. We found waiver where the owner's agent knew of the time limitation, knew that it had expired, but repeatedly agreed to extend the time limitation for the buyers. Id. at 486-87, 457 A.2d at 287. Waiver is not at issue in the instant case  plaintiff is asserting that the Banfields conferred an affirmative benefit on him by expanding the scope of his deeded right. Even if waiver were somehow relevant, plaintiff cannot show that the Banfields voluntarily relinquished a known right. Id. at 485, 457 A.2d at 287. The undisputed evidence, viewed in plaintiff's favor, is that both plaintiff and the Banfields misunderstood the terms of plaintiff's deed from Mr. Knowles. The trial court properly found enforcement of plaintiff's claimed oral agreement barred by the Statute of Frauds.
¶ 21. Plaintiff next argues that the court erred in granting summary judgment to defendants on the breach-of-contract claim in his complaint, which apparently also included a tortious-interference-with-contractual-relations claim against Mr. Wells. See Williams v. Chittenden Trust Co., 145 Vt. 76, 80, 484 A.2d 911, 913 (1984) ("One who intentionally and improperly interferes with the performance of a contract . . . between another and a third person by inducing or otherwise causing the third person not to perform the contract, is subject to liability to the other for the pecuniary loss resulting to the other from the failure of the third person to perform the contract." (citation omitted)). According to plaintiff, the evidence shows that this was a "package case," and thus, the transaction at issue was inherently suspect. Plaintiff complains that although the trial court noted the legal standard applicable to package cases, it ruled against him after making findings on disputed issues and drawing inferences that favored the moving party.
¶ 22. More specifically, plaintiff argues that the court erred in concluding that Mr. Wells made a good-faith, arms-length offer despite evidence that Mr. Wells calculated his price to discourage plaintiff from exercising his right of first refusal, and Mr. Wells' testimony that the larger parcel was less valuable to him if plaintiff acquired the smaller lot. Plaintiff also points to the fact that the smaller lot was burdened by an agricultural easement, which he argues calls into question whether the $150,000 offer reflected an arms-length negotiation.
¶ 23. Turning to the transaction itself, plaintiff argues that the court should not have determined that Mr. Wells made two separate offers, either of which Mrs. Banfield could have accepted or rejected, because there was evidence that the negotiations between Mrs. Banfield's agent and Mr. Wells were based on a total price for both properties and Mrs. Banfield allowed Mr. Wells to structure the allocation of that price. Plaintiff also maintains that Mr. Wells would not have actually been bound by his offer for the smaller lot because the offer contained an appraisal contingency. Finally, plaintiff points to evidence that defendants refused to disclose the terms of their agreement for the larger parcel until suit was filed, as well as evidence that Mr. Wells sold the house and 2.8 acres for $300,000 shortly after purchasing the larger lot.
¶ 24. Plaintiff's allegations are immaterial to the resolution of his claims against defendants, and we find no basis to disturb the trial court's conclusion. Pursuant to *79 the terms of his deed, plaintiff possessed the "first right to purchase" the 25.1-acre lot "at the highest price" offered to Mrs. Banfield within thirty days after notice in writing of any offer to purchase. In other words, when Mrs. Banfield received a bona fide offer for the property, she was obligated to first provide plaintiff the opportunity to purchase it at the same price. See Bricker v. Walker, 139 Vt. 361, 364, 428 A.2d 1129, 1131 (1981) (right of first refusal triggered by the appearance of a purchaser "who is ready, willing and able to buy"). The undisputed facts show that Mr. Wells made a bona fide offer for the property, and that Mrs. Banfield provided plaintiff the opportunity, which he exercised, to buy the property on the same terms.
¶ 25. A bona fide offer is one made "honestly and with serious intent" where "the offeror genuinely intends to bind itself to pay the offered price." Uno Rests., Inc., 805 N.E.2d at 963 (explaining that this requirement prevents property owners "from extinguishing a right of first refusal by simply relaying vague offers that may include indefinite terms from unidentified third parties"). A prospective buyer may inflate the price for a parcel, or be motivated by a desire to defeat a right of first refusal, and still make a bona fide offer. Id. As the Massachusetts Supreme Judicial Court recognized,
[i]nherent in a right of first refusal is the fact that a third party, not the holder of the right, will dictate the price, and the holder therefore runs the risk that the third party will agree to a price that is above market value, or that is above what the holder is willing and able to pay.
Id. The question is whether the purchaser honestly intended to be bound by its offer. Id.
¶ 26. The undisputed evidence in this case shows that Mr. Wells honestly intended to be bound. He wanted to purchase both lots. The smaller lot, to the extent that it was undeveloped, added value to the larger parcel. It afforded expansive views for the house on the adjoining land. Additionally, because the Banfield house essentially abutted the 25.1-acre lot, Mr. Wells had great incentive to make an offer that would discourage plaintiff from exercising his right to buy. If plaintiff purchased this lot, the agricultural easement would be extinguished and the lot could be subdivided and developed. Mr. Wells could legitimately consider all of these factors in deciding how much to offer for the 25.1-acre lot, and the record shows that he did not make an arbitrary offer for this lot.
¶ 27. Plaintiff was not entitled to purchase the property at what he considered its fair market value, id., and his appraisal of the lot does not set a benchmark for what Mr. Wells could offer, nor does it establish the value of this property to Mr. Wells. The existence of an appraisal contingency, which Mr. Wells included in both offers, does not establish that Mr. Wells did not intend to be bound. See id. (stating that "there is nothing about conditional offers that compels an inference of bad faith"). We are equally unpersuaded by plaintiff's contention that because Mr. Wells had the 78-acre property appraised as a whole his offer for the smaller lot was not bona fide.
¶ 28. While Mrs. Banfield may have wanted a certain total price for all of the land, there is no evidence that she and Mr. Wells discussed how much he should offer for each parcel. To the contrary, the undisputed evidence shows that Mr. Wells made this decision himself. See id. at 961, 965 (addressing similar situation, and finding no breach of covenant of good faith and fair dealing where there was no evidence that seller influenced or attempted to influence allocation of money between two purchase and sale agreements, allocation was *80 left entirely to buyer, and there was no evidence of any collusion between parties to frustrate or impair right of first refusal). Even if the combined offers matched Mrs. Banfield's asking price, she remained free to accept or reject either offer on its own terms.
¶ 29. The remaining factual disputes identified by plaintiff are equally immaterial. The genuineness of Mr. Wells's offer is not undermined by defendants' alleged refusal to disclose the terms of their agreement for the larger parcel until suit was filed, nor by evidence that Mr. Wells decided to sell part of the property after purchasing it. We do not see the relevance of either contention. We agree with the trial court that the undisputed facts show that Mr. Wells made a bona fide, arms-length offer for the 25.1-acre parcel.
¶ 30. We are not persuaded to a contrary conclusion by the "package" cases cited by plaintiff. Even if we recognize the principle that "allocations of price by interested parties to elements of a package may readily be manipulated to defeat contractual rights to substantially similar price terms," Gleason v. Norwest Mortgage, Inc., 243 F.3d 130, 143 (3d Cir.2001), there is no evidence in this case that Mrs. Banfield and Mr. Wells colluded and arbitrarily allocated prices for the parcels as part of a package deal to defeat plaintiff's right of first refusal.
¶ 31. As noted above, Mr. Wells determined how much he wanted to offer for each parcel, and he made two independent offers, either of which Mrs. Banfield could have accepted or rejected. The fact that Mrs. Banfield wanted to sell both lots, that Mr. Wells wanted to buy both lots, and that the value of one parcel was somewhat dependent on the other, does not show collusion, nor does it demonstrate that the offers made by Mr. Wells were not bona fide. See Note, Rights of First Refusal and the Package Deal, 22 Fordham Urb. L.J. 461, 479 (1995) (arguing that holder of right of first refusal should not be allowed to determine manner in which burdened property is disposed of, and stating that allowing right of refusal to "affect adversely the marketability of property not covered by the privilege is contrary to both the owner's expectations and the privilege's operation").
¶ 32. There is no evidence that the value that Mr. Wells assigned to either parcel was without meaning, or that the offer for the 25.1-acre parcel was "unreasonably inflated." Pantry Pride Enters. v. Stop & Shop Cos., 806 F.2d 1227, 1232 (4th Cir.1986); see also Uno Rests., Inc., 805 N.E.2d at 965-66 (assuming, without deciding, that breach of covenant of good faith and fair dealing could exist where seller accepted grossly disproportionate allocations of price for burdened and nonburdened property, but right holder must show more than that price for burdened property was somewhat higher than fair market value). This is simply not a case where the burdened parcel was combined with a larger parcel and sold to a third party to defeat plaintiff's right of first refusal. Cf. Sawyer v. Firestone, 513 A.2d 36, 40 (R.I.1986) (agreeing with majority view that seller may not defeat right of first refusal by selling property subject to right as part of a larger tract, and stating that while holder of right may not force separate sale of land, he or she can enjoin sale of larger tract that includes parcel subject to right of first refusal). The record does not show that Mr. Wells or Mrs. Banfield interfered with or violated plaintiff's right of first refusal, and summary judgment was properly granted to defendants.
Affirmed.