Howard S. Nichols, Beatrice M. McWayne, Lorraine Streeter, Carl C. Nichols, Helen H. Tyler, Elizabeth A. Monroe, Jaska Leach, and the Estate of Ada Nichols v. John W. and Ethel M. Nichols, Jr.

[427 A.2d 374]

No. 439-79

Present: Barney, C.J., Daley, Larrow, Billings and Hill, JJ.

Opinion Filed February 3, 1981

274

*Arthur J. O'Dea, P.C.*, Manchester Center, for Plaintiffs.

*Susan F. Humphrey* and *Peter F. Langrock* of *Langrock Sperry Parker & Stahl*, Middlebury, for Defendant.

Barney, C.J. The defendants, John W. Nichols, Jr., and his wife, Ethel, were conveyed the family farm by John's mother, Ada Nichols, now deceased, after operating it at her instance for many years. It was the defendants' claim that this conveyance was in response to their performance of an agreement to manage the farm and take care of Ada during her lifetime. The plaintiffs, who are John's seven surviving brothers and sisters plus the estate of his mother, brought suit seeking an accounting of the farm operations since 1960 and a redistribution of the farm property through the estate. The defendants, in turn, counterclaimed for a parcel of real estate called the Chancellor Allen Tract, which had been treated as part of the farm operation but had been separately acquired, and was not included in the original conveyance to John from Ada.

Many issues were raised, some of them equitable. The trial court empanelled an advisory jury, submitting interrogatories to it. At the close of the plaintiffs' case, the court directed a verdict against the plaintiffs on the claim that Ada Nichols was mentally incompetent when she executed the deeds in 1973. The jury, after hearing all the evidence, found that

there was no undue influence involved, that there was an agreement by Mrs. Nichols to convey the farm to John and Ethel in return for their management of the farm operations and taking care of Ada Nichols until her death, that the agreement included the Chancellor Allen Tract, and that John and Ethel had carried out their part of the agreement. The judge gave judgment for the defendants on the plaintiffs' complaint, and made findings and entered judgment granting specific performance to the defendants on their counterclaim. Both judgments are appealed.

The background of the case arises from circumstances not uncommon. Mrs. Ada Nichols was left a widow by the unexpected death of her husband in 1938. She needed and wanted help from her children in operating the family dairy farm. Two of her sons undertook to do so, but under their management the dairy herd went from 69 to 19 cows. John, Jr., the defendant, though only 15 years old and attending agricultural school, found out what was going on and came home, leaving school. He took over in place of his brothers and began to run the farm. He also worked off the farm and put his earnings into its operation.

In 1942 John married Ethel. They were still on the home place, but John had an attractive offer to become the owner of another farm. He contemplated taking his mother and his younger brother and sisters with him to the new place. His mother did not want to move. It was his evidence, accepted by the jury and the trial court, that, at that time, his mother told him he could have the family farm if he would farm it, pay off all the bills, and take care of her until her death.

It is unquestioned that he did farm the land, increasing the herd to 105 head by 1968, that he paid off the mortgage and indebtednesses, and that he took care of his mother on the farm until her death in 1978. Ethel worked outside of the farm, putting her earnings into the farm as well.

Although the farm was not conveyed to John and Ethel in 1958, that year Mrs. Ada Nichols turned over management of the farm operations to them. She notified the local merchants that bills should be sent to John as he had taken over. By this time all of the other children had left the home place. At Mrs. Nichols' request Ethel quit her job and stayed at home

with her. This persisted for twenty more years until Ada Nichols' death in 1978.

The home farm consisted essentially of two properties. The original farm was known as either the Burrows or the Stone Farm. It was held jointly by Ada and her husband. There was also a parcel known as the Chancellor Allen Tract which Ada's husband had acquired during coverture, but had kept in his name alone. At his death title passed to Ada and the Nichols children. In 1968 the children quitclaimed this parcel to their mother. At that time a parcel of the Chancellor Allen Tract was being sold off.

In 1972 Ada Nichols wrote a letter to an attorney directing him to draw up deeds conveying to John and Ethel land not described but referred to as the land she had had up for sale for $22,000. In that letter she described her agreement with John and indicated that he had carried out his part of the agreement. The deeds, as prepared, conveyed to John and Ethel all but the Chancellor Allen Tract. The testimony indicates that Ada later expressed concern that the deeds she signed omitted the Chancellor Allen parcel. The trial court found that her agreement to convey the farm included the Chancellor Allen Tract.

A letter from the oldest sister, one of the plaintiffs, to the same lawyer in 1974 indicates a fear that her mother would be left destitute if something happened to John, who, by then, was about fifty. He had had a heart attack in 1968 from which he had not fully recovered, and his sister was concerned that he would sell off all the property if their mother deeded it all to him at that time. It was John's testimony that he agreed to await title to the Chancellor Allen Tract in response to that concern. On December 3, 1978, Ada Nichols died at age 85 with title to the Chancellor Allen Tract still in her name. This lawsuit to set aside her deed of the rest of the farm was filed in January, 1979.

The first issue raised by the plaintiffs contests the direction of a verdict against the plaintiffs by the trial court on the issue of Ada Nichols' claimed incompetency. The record is devoid of any suggestion that, at any of the relevant times relating to the conveyances, Ada Nichols lacked mental competence. With competency rather than incompetency pre-

sumed, and with no evidence to sustain a finding of incompetency, the trial court's ruling was correct at law. *Stewart* v. *Flint*, 59 Vt. 144, 152–53, 8 A. 801, 806 (1886); 23 Am. Jur. 2d *Deeds* § 46. This is particularly true here, since the verdict was advisory and the court had the option of adopting its own view of the evidence.

The plaintiffs also contend that receiving evidence that the Nichols' farm was listed in the grand list in defendant John Nichols' name was so prejudicial as to require reversal. The argument is that such evidence of the listing would tend to give undue weight to the defendants' claim of title, by suggesting it had had outside recognition. This argument is made in the face of the relevance of the evidence to the claimed contract between John and Ada, in that John performed that portion requiring him to pay the taxes. Furthermore, this contention argues for an effect of the manner of listing that is belied by the statute. 32 V.S.A. § 3651 (land can be listed in the name of the possessor as well as the owner). It is also contradicted by John's own contemporaneous statement that the listing was based, not on ownership, but on the fact that he did pay the taxes, undeniably true. Certainly, in the presence of the exhibits which included the pertinent deeds evidencing the state of the title and the careful cautionary instructions of the trial court, prejudice as a matter of law cannot be found. There is no error on this issue, and the plaintiffs have not demonstrated any basis proper for setting aside the judgment in favor of the defendants on the complaint.

Turning to the counterclaim for the Chancellor Allen Tract, the plaintiffs contend that it is barred, as a matter of law, by the Statute of Frauds. 12 V.S.A. § 181. It is hornbook law that such performance under an oral contract as will make it a fraud to apply the prohibition of the statute supports equitable relief and makes the contract enforceable. *Laplante* v. *Eastman*, 118 Vt. 220, 225, 105 A.2d 265, 269 (1954). This does not mean that the party seeking to enforce the contract must show that he has been defrauded; rather, he must show "that acts of his, done in reliance on the agreement, known to the defendant, so altered the relations of the parties as to prevent restoration to their former condition."

*Towsley* v. *Champlain Oil Co.,* 127 Vt. 541, 543, 254 A.2d 440, 442 (1969). Such is the case here. In this case both the jury in its advisory verdict and the court in its findings determined that the defendants had, over many years, fully performed under the contract and were entitled to have the whole farm conveyed to them. There is evidence supporting the findings, and the judgment on the counterclaim is well founded.

The plaintiffs seek to bar the counterclaim by claiming laches. Since the contract under consideration called for performance to continue until Ada Nichols' death in 1978, the defendants can hardly be said to have "slept on their rights." Indeed, the institution of suit by the plaintiffs insured that the defendants had no opportunity to be at all dilatory unless they failed to advance their position in a counterclaim, which counterclaim obviously was made. The doctrine of laches is inapplicable here.

The last two issues relate to the right of Ada Nichols to promise to convey the Chancellor Allen Tract at a time when she was not the owner since it was partly owned by the children. The children first contend that Ada could not contract to convey the property because she did not own the tract at the time of the contract. However, although one may not, at the time of contracting to sell, have the power to convey, this is no impediment to a promise to convey property later acquired. *Drew* v. *Bowen,* 102 Vt. 124, 127, 146 A. 254, 256 (1929). That is what happened here, under the evidence, and, again, is enforceable. Second, they contend that Ada could not alienate their interests without their approval. At the time the contract called for Ada's performance, she had full ownership of the property. The contention that, somehow, a conveyance by Ada Nichols after she had acquired full ownership had to be conditioned on approval by the former owners is simply not the law.

*Judgment affirmed.*