# In re Estate of Gorton
# (Leo and Betty Lou Gorton, Appellants)

[706 A.2d 947]

No. 96-454

Present: **Amestoy, C.J., Dooley, Morse, Johnson and Skoglund, JJ.**

Opinion Filed December 12, 1997

Motion for Reargument Denied December 31, 1997

*Andrew Jackson*, Middlebury, for Appellants.

*James C. Foley* of *Deppman & Foley, P.C.*, Middlebury, for Appellee.

**Johnson, J.** Appellants Leo and Betty Lou Gorton, the son and daughter-in-law of the deceased, Doris Gorton, appeal from a decision of the superior court dismissing their claim against the estate of the deceased. Appellants allege that they had an oral agreement with the deceased to provide services and make payments to her during her life in exchange for the transfer of a barn and farmland to them upon her death. They contend that the court erred by concluding that their allegations are insufficient to establish reliance on the oral agreement such that they are equitably entitled to specific performance. Appellants also appeal the court's decision that, under V.R.C.P. 72(d), they are not entitled to a jury trial on their claim. We reverse and remand for trial by court.

This case presents us with a procedural puzzle. Although the parties refer to the motion before the superior court as a motion for summary judgment, the record contains no affidavits, depositions, answers to interrogatories or admissions. Further, the decision of the court indicates that the court assumed that all of appellants' allegations were supported by sworn testimony in the probate court, evidently without ever reviewing that testimony. Thus, we review the superior court decision as though it dismissed appellants' request for a trial de novo on the pleadings. See V.R.C.P. 12(c). To review a judgment on the pleadings, we consider all the factual allegations in the pleadings of the nonmoving party and all reasonable inferences that can be drawn from them to be true and allegations to the contrary by the moving party to be false. *Thayer v. Herdt*, 155 Vt. 448, 456, 586 A.2d 1122, 1126 (1990). The administratrix of the estate is not

entitled to judgment if appellants' allegations, if proved, permit recovery. *Id.* Thus, we summarize the facts as alleged by appellants.

Leo Gorton, Sr. and Doris I. Gorton owned and operated a farm in Cornwall, Vermont, where they raised their six children.[1] The farm consists of seventy acres and a barn on the west side of West Street and forty-two acres and a home on the east side of West Street. None of the six children continued in farming. Appellants Leo Gorton, Jr. and Betty Lou Gorton live next door to the family farm on their own land. Leo Jr. worked in the construction business, and Betty Lou worked at the Middlebury A & P.

In 1986, Doris first complained of ailments that later were diagnosed as resulting from cancer, and Betty Lou left her job of fourteen years to care for her mother-in-law. In April 1988, Doris was diagnosed with cancer and began chemotherapy treatments, and in May 1988, Leo Sr. died, leaving his share of the farm to his wife Doris. Because Doris wanted to keep the farm in the family, Leo Jr. and Betty Lou agreed to pay Doris $350 per month and one-half of her real estate taxes, plus provide assistance by maintaining her home and farm and providing for her care. In exchange, Doris agreed that upon her death certain farmland would be conveyed to Leo Jr. and Betty Lou. Under the agreement, Leo Jr. and Betty Lou began farming a portion of his mother's land by purchasing beef cattle in June 1988. Doris spoke with her attorney, a surveyor, friends and family members over the years about the agreement.

The same summer, Doris and Leo Jr. hired a survey technician,. Ramona Powers. They explained to Ms. Powers that they wanted her to prepare maps of the land Doris intended to convey to Leo Jr. and Betty Lou. Ms. Powers prepared maps indicating the four lots that were to be conveyed: seventy acres on the west side of West Street and three lots of 3.75 acres, 8.75 acres and 4.75 acres on the east side of West Street. In 1989, Doris visited her attorney, Mike Mathes, and informed him that she had an agreement with Leo Jr. and that Leo Jr. was getting a large part of the farm, including a large pasture and barn on the west side of the road. In 1991, Leo Jr. and Betty Lou purchased 178 acres of land that has no road frontage but that adjoins Doris's land on the west side of the street. Attorney Mathes represented the seller at the closing and remembers Leo Jr. informing him. that he was purchasing the 178 acres to go along with the land he was getting from his mother. Leo Jr. invested in expensive fencing and

---

[1] To distinguish members of the Gorton family, we refer to them by their first names.

spent over a week enclosing all the lands, which he operated as one farm.

Performing their part of the agreement, Leo Jr. and Betty Lou paid Doris $350 monthly and one-half the taxes on the whole farm every year until Doris died, an amount three times the rental value of the farm property. Betty Lou cared for Doris by preparing meals, driving her to hospital appointments and staying overnight with her in the last months of her life, while Leo made substantial repairs and capital improvements to Doris's home.

In August 1994, Betty Lou informed attorney Mathes that Doris's cancer was terminal. Based on the maps prepared by Ramona Powers, attorney Mathes prepared three deeds covering the four lots and took them to Doris's house on August 22, 1994, but Doris was not feeling well enough to discuss the deeds. On August 31, 1994, Betty Lou telephoned attorney Mathes and told him that Doris was alert and able to deal with the deeds but attorney Mathes was unable to get to Doris's home that day. Doris died on September 1, 1994.

In January 1995, the administratrix of the estate of Doris Gorton sent Leo Jr. a demand for rent payment of $350 per month for the last five months and for one-half of the property taxes on the entire farm for use of the barn and farmlands. Leo Jr. and Betty Lou responded by filing a claim against the estate for the barn and the surveyed lands on the basis of the oral agreement with Doris. The administratrix disallowed the claim. Following a hearing, the probate court concluded that (1) the testimony of attorney Mathes must be excluded due to the attorney/client privilege,[2] (2) appellants had an oral contract with the deceased for the transfer of real estate in exchange for payments and care given her in her lifetime, (3) appellants had not shown a change in position in reliance on the oral agreement requiring specific performance, but (4) appellants were entitled to damages for the expenses they incurred as a result of the oral contract.

Appellants requested a trial de novo by jury in superior court. See V.R.C.P. 72(d) and Reporter's Notes (appeal from probate court is by trial de novo in superior court). Rule 72 limits the issues before the superior court to those raised by appellants in their statement of questions. See Reporter's Notes to V.R.C.P. 72. Appellants' statement

---

[2] We do not decide whether the testimony of the deceased's attorney must be excluded based on the attorney/client privilege because this issue was not raised before, nor addressed by, the superior court.

asserted that they were raising all issues that were before the probate court, but then specified two questions regarding recovery only: (1) whether appellants were entitled to specific performance, and (2) if not, whether appellants were entitled to damages. Because appellants won damages before the probate court and the administratrix did not appeal from that judgment, we review this case as though the only issue before the superior court was the issue of specific performance.[3]

The administratrix filed a motion for summary judgment in superior court without any supporting affidavits. Appellants responded to the motion, also without any supporting affidavits, but with references to the taperecording of the testimony before the probate court. The court granted the administratrix's motion without reviewing the testimony, holding that, accepting all appellants' factual claims as true, the agreement was too vague to enforce and was barred by the Statute of Frauds. The court also held that appellants had no right to trial by jury because an action for specific performance sounded in equity, and therefore, did not afford the right to trial by jury. Nonetheless, the court affirmed the decision of the probate court awarding appellants damages. Appellants appeal.

I.

In general, a contract for the sale of lands is controlled by the Statute of Frauds and must be in writing to be enforceable. *Chomicky v. Buttolph*, 147 Vt. 128, 130, 513 A.2d 1174, 1175 (1986); see 12 V.S.A. § 181(5). A court may specifically enforce an oral contract to convey land, despite the Statute of Frauds, where the plaintiff is equitably entitled to the real estate. Enforcement is justified on the ground that repudiation by one party after the other has fully performed amounts to a virtual fraud. Restatement (Second) of Contracts § 129 cmt. a (1981). In such circumstances, enforcing the requirements of the Statute of Frauds would promote rather than prevent a fraud. *Towsley v. Champlain Oil Co.*, 127 Vt. 541, 543, 254 A.2d 440, 442 (1969).

The Restatement (Second) of Contracts § 129 (1981) states the exception to the general rule in the Statute of Frauds:

---

[3] We can conceive of no reason why appellants would appeal the decision that an oral contract existed and that they were entitled to damages: both issues were resolved favorably to them in probate court. Moreover, the superior court affirmed the award of damages, the administratrix did not file a notice of cross-appeal in this Court, and she conceded at oral argument that she owed appellants the damages found by the probate court.

> A contract for the transfer of an interest in land may be specifically enforced notwithstanding failure to comply with the Statute of Frauds if it is established that the party seeking enforcement, in reasonable reliance on the contract and on the continuing assent of the party against whom enforcement is sought, has so changed his position that injustice can be avoided only by specific enforcement.

Accord *Nutting v. Freda*, 153 Vt. 501, 502, 572 A.2d 896, 897 (1990). Thus, the court may enforce an oral agreement for the transfer of land where the plaintiffs can show that (1) there was an oral agreement (2) upon which they reasonably relied (3) by changing their position so that they cannot be returned to their former position, and (4) the other party to the agreement knew of such reliance.

The main issue in dispute, as in most cases of this nature, is whether appellants have alleged a substantial and irretrievable change in position in reliance on the agreement. See *Jasmin v. Alberico*, 135 Vt. 287, 289, 376 A.2d 32, 33 (1977) (real issue is change of position in reliance on oral agreement to such measure that parties cannot be restored to reasonable equivalence of former condition). The reliance must be something beyond injury compensable by money to warrant enforcement of the contract despite the Statute of Frauds. *Chomicky*, 147 Vt. at 131, 513 A.2d at 1176. Payments on the purchase price are not enough to make an oral agreement enforceable. *Id.* at 132, 513 A.2d at 1176.

Possession coupled with substantial improvements may be such that the plaintiffs cannot be restored to their former position. *Jasmin*, 135 Vt. at 290, 376 A.2d at 34; see, e.g., *Bassler v. Bassler*, 156 Vt. 353, 359, 593 A.2d 82, 86 (1991) (installing hot water heaters, insulation, new siding, new flooring, new furnace, new windows and frames, excavating and grading road to house, removing barn, building deck and draining and clearing brush around pond sufficient to support trial court decision to take agreement out of Statute of Frauds). Moreover, full performance by one party in reliance on the agreement may support equitable enforcement where the parties cannot be returned to their former position. See, e.g., *Nichols v. Nichols*, 139 Vt. 273, 277-78, 427 A.2d 374, 377 (1981) (defendants fully performed under contract for many years by farming family farm, paying all bills and taking care of mother until her death, and therefore, were entitled to have farm conveyed to them). And full performance by one party and part performance by the other may

support an order for specific performance. See, e.g., *Laplante v. Eastman*, 118 Vt. 220, 223-25, 105 A.2d 265, 268-69 (1954) (full performance by plaintiff by caring for deceased, his household, and his lands, plus part performance by deceased by purchasing home for plaintiff and giving her possession supports order of specific performance).

Appellants here allege that they had an oral agreement with Doris that they would receive eighty-eight acres of farmland at her death if they cared for Doris and her home and paid her $350 per month and one-half the taxes on the entire farm until her death. The land intended to be conveyed to appellants is the land described on the surveys prepared by Ramona Powers. Appellants maintain that they fully performed under the terms of the agreement, and in addition, relied on the agreement by leaving their employment to farm and take care of Doris, by purchasing an additional 178 acres adjoining Doris's land subject to the agreement, and by making improvements to the land. They also claim that Doris acknowledged the oral agreement by speaking of it with her attorney, the surveyor, friends and other family members.

■ The trial court erred in holding, as a matter of law, that the facts alleged do not rise to the level that would allow equity to enforce specific performance. Cf. *Thayer*, 155 Vt. at 456, 586 A.2d at 1126 (judgment on pleadings reversed where it cannot be said, as matter of law, that acts alleged would not allow recovery). If we regard all appellants' allegations as true, it would not have been an abuse of discretion for the court to enforce the oral agreement based on equitable considerations. See *Nutting*, 153 Vt. at 502-03, 572 A.2d at 897 (court has discretion to order specific performance of oral contract to convey land based on equitable considerations); see, e.g., *Nichols*, 139 Vt. at 276, 427 A.2d at 376-77 (oral agreement to leave family farm to son if he farmed it, paid off bills and took care of mother until her death specifically enforced where son fully performed under contract); *Laplante*, 118 Vt. at 224-25, 105 A.2d at 269 (evidence supported specific enforcement of oral agreement to convey home to plaintiff where plaintiff fully performed under contract by maintaining home and farms for deceased who had purchased home for plaintiff and given her possession).

Indeed, the administratrix counters appellants' claim on factual grounds. She rejects appellants' inference that they left their jobs and changed their lifestyle to farm and care for Doris in reliance on the agreement, and maintains that Leo Jr. continues in his construction

business and Betty Lou left her job for reasons unrelated to Doris. Cf. *Nichols*, 139 Vt. at 275, 427 A.2d at 376 (son gave up attractive offer to become owner of another farm to take care of family farm and mother until her death). Such factual disputes cannot be decided upon motion for judgment on the pleadings. We express no opinion on the merits but remand because the trier of fact must make findings and decide based on those findings whether equitable relief is appropriate in this case.

## II.

The superior court also concluded that the allegation of the specific lands to be conveyed was too vague to be enforced. See *Reynolds v. Sullivan*, 136 Vt. 1, 3-4, 383 A.2d 609, 611 (1978) (vagueness and indefiniteness as to essential terms of agreement can preclude court from granting specific performance). Assuming all appellants' allegations are true, the lands were surveyed and mapped, and Doris told the surveyor that she intended to convey the surveyed lands to Leo Jr. and Betty Lou; thus, the pleadings show an agreement adequately specific to enforce.

## III.

Finally, appellants argue that the court erred by holding that they are not entitled to a jury trial because their request for specific performance is an equitable remedy that does not afford the right to trial by jury. They contend that V.R.C.P. 72(d) grants a right to trial by jury in superior court on an appeal from the probate court. Rule 72(d) provides, "The questions contained in the appellant's statement of questions shall be tried to a jury *if one is demanded in accordance with Rule 38*." (Emphasis added.) Appellants maintain that Rule 72(d) affords the right to trial by jury on any issue if the demand is served in accordance with Rule 38. We disagree.

Rule 38(a) preserves that right of trial by jury as declared by the Constitution or by statute. V.R.C.P. 38(a). Subsection (b) states, "Any party *may demand a trial by jury of any issue triable of right by a jury* by (1) serving upon the other parties a demand therefor in writing . . . ." V.R.C.P. 38(b) (emphasis added). Thus, a demand for trial by jury is "in accordance with Rule 38," as required by Rule 72(d), if it demands "trial by jury of any issue triable of right by a jury." Rule 72(d) would require *service* in accordance with Rule 38 if it meant that merely the service of the demand must be in accordance

with Rule 38. We therefore hold that Rule 72(d) does not grant the right to trial by jury where it is not otherwise declared by the Constitution or by statute.

In this case, there is no statutory right to trial by jury, and the Vermont Constitution guarantees the right to trial by jury only to the extent that it existed at common law at the time of its adoption. *Hodgdon v. Mt. Mansfield Co.*, 160 Vt. 150, 155, 624 A.2d 1122, 1125 (1992). Thus, entitlement to a jury trial "is dependent upon the relief requested; if the relief requested is equitable, no right to jury trial exists." *In re Estate of Archambault*, 147 Vt. 649, 649, 520 A.2d 154, 154 (1986) (mem.); see also *Hodgdon*, 160 Vt. at 155, 624 A.2d at 1125 (where plaintiff requested only equitable relief, she was not entitled to trial by jury). Appellants request specific performance, which is an equitable remedy. Their request for "damages" is more accurately a request for restitution, to return them to their former position, and therefore, it is also an equitable remedy. There is no remedy at law, for which they would be entitled to trial by jury, because it is barred by the Statute of Frauds. Consequently, plaintiffs are not entitled to trial by jury.

*Reversed and remanded.*