Rappaport v. Banfield, No. 80-2-03 Wncv  (Katz, J., July 14, 2005)

[The text of this Vermont trial court opinion is unofficial.  It has been reformatted from the original.  The accuracy of the text and the accompanying data included in the Vermont trial court opinion database is not guaranteed.]

STATE OF VERMONT                                    SUPERIOR COURT
Washington County, ss.:                            Docket No. 80-2-03 Wncv


JEROME RAPPAPORT

v.

LAURA BANFIELD and
DUANE WELLS


ENTRY


      Defendants Banfield and Wells seek judgment on the scope of Plaintiff Rappaport's right of first refusal, and on the propriety of the sale in which the right eventually was exercised.

      The facts, briefly, are as follows.  Rappaport, a neighboring landowner with extensive land holdings, held a deeded right of first refusal on a 25-acre lot, which was one of several contiguous lots held by Banfield. The combined Banfield property included a home and significant additional acreage.  Rappaport also held a deeded easement on the 25-acre lot to use it for certain agricultural purposes, and it has been so used for a long time. There is no dispute that this 25-acre lot, so long as it is kept open, provides magnificent views from the home on the combined Banfield property; otherwise the Banfield home would have no such views.

At the time when Banfield determined to sell the combined property, Rappaport (and probably Banfield) believed that Rappaport's right of first refusal extended to the entire Banfield property, not just the 25-acre lot. Rappaport now does not dispute that the deeded right of first refusal only applies to the 25-acre parcel. But, he alleges that the common understanding dating back many years between him and the Banfields was that the right extended to the whole Banfield property, and that the parties acted according to that understanding. He seeks enforcement of that understanding even though no writing evidences it sufficiently for purposes of Vermont statute of frauds, 12 V.S.A. § 181.

A contract for the sale of lands is unenforceable if not signed "by the party to be charged therewith." 12 V.S.A. § 181. While a right of first refusal is not a contract for sale itself, it is an interest concerning land, and thus falls within the statute of frauds. See *id*. § 181(5); cf. *McGuirk v. Ward*, 115 Vt. 221, 224 (holding an option to buy land concerns lands and therefore comes within the statute of frauds). There is no writing signed by the Banfields in this case. Nevertheless, Rappaport claims an equitable right to specific performance of his understanding of the right of first refusal under *In re Estate of Gorton*, 167 Vt. 357 (1997).

The principles in *Gorton* do not apply here. In *Gorton*, the Vermont Supreme Court applied an exception to the statute of frauds, Restatement (Second) of Contracts § 129 (1981). That rule permits enforcement of an oral agreement to convey land where "repudiation by one party after the other has fully performed amounts to a virtual fraud." *Gorton*, 167 Vt. at 361. At the outset, Rappaport's allegations do not clearly claim that there ever was an oral agreement between the parties explicitly on the issue of the scope of the right of first refusal. His vague allegations suggest a mutual misunderstanding on the scope of the deeded right more than any specific agreement different from the deeded one. See *id*. at 364 (vagueness and indefiniteness as to essential terms of agreement can preclude court from granting specific performance). Nevertheless, assuming there was such an agreement, and that Rappaport reasonably relied on it, still Rappaport does

2

not explain how his reasonable reliance caused him to substantially and irretrievably change his position, a necessary element of his claim. See *id*. at 362. The *Gorton* appellants, quite to the contrary, alleged that they rightfully took possession of the disputed property, substantially improved the property, quit their jobs to care for the seller, etc., all in reliance on a specific oral agreement to convey the property. Rappaport merely advances his own disappointment at learning of the more limited scope to the right of first refusal in the deed. He does not suggest that he "performed" any obligations under the supposed agreement; he does not even explain what his obligations were. We see no basis for applying the exception to the statute of frauds, which we conclude applies to this case and makes the claimed oral agreement unenforceable. Rappaport's right of first refusal is limited to the 25-acre lot.

Having determined the scope of Rappaport's right, we examine its nature. The deeded right purports to grant to Rappaport, "In the event of the sale [of the 25-acre lot] . . . the first right to purchase said property at the highest price" offered to Banfield, within 30 days of such an agreement to sell. Such a right of first refusal is known "more technically as a preemptive option, as a right of preemption, or simply as a preemption." Hare v. McClellan, 662 A.2d 1242, 1247 (Conn. 1995).

> A right of pre-emption is a right to buy before or ahead of others; thus, a pre-emptive right contract is an agreement containing all the essential elements of a contract, the provisions of which give to the prospective purchaser the right to buy upon specified terms, but, and this is the important point, only if the seller decides to sell. It does not give the pre-emptioner the power to compel an unwilling owner to sell, and therefore is distinguishable from an ordinary option.

*Id*. (quoting Annot., 40 A.L.R.3d 920, 924 (1971)). Such a right of first refusal is triggered by a good faith offer by a third party that is acceptable to the seller. "A third-party offer is [made in good faith] if it was made

'honestly and with serious intent,' that is, if the offeror genuinely intends to bind itself to pay the offered price." *Uno Restaurants Inc. v. Boston Kenmore Realty Corp.*, 805 N.E.2d 957, 963 (Mass. 2004) (in analogous circumstances, explaining in detail the propriety of a third party's good faith offer on one unit it valued substantially higher than others for which it made a separate offer).

The parties devote the lion's share of their briefing to cases in which the seller attempts to breach the right of first refusal by packaging the burdened lot with others, and attempting to sell one larger lot. The "vast majority of courts" addressing such situations do not allow the right to be so defeated; the "package deal" simply renders "nugatory a substantial right which the optionee had bargained for and obtained." *Chapman v. Mut. Life Ins. Co. of N.Y.*, 800 P.2d 1147, 1151 (Wyo. 1990) (quoting *Guaclides v. Kruse*, 170 A.2d 488, 495 (N.J. Super. 1961)). Though there are other approaches, the majority of courts would simply enjoin the package deal altogether, rather than consider the right of first refusal triggered by it, and then try to fashion a price for the right-holder. *Chapman*, 800 P.2d at 1152. The *Chapman* court explains its purpose in adopting the majority position as follows:

> It is undesirable for a court to reform the contract by placing a value on the property. If at all possible that should be left to the parties and the market they choose to contract in. Monetary damages are not necessary where the parties may be readily restored to their former positions without suffering irreparable harm. Returning the parties to the positions they occupied before the attempted sale of the larger parcel recognizes their agreement and provides the opportunity for its performance without judicial intrusion into establishment of the price term of any desired sale.

Id. The "package deal" is problematic even where the parties attempt to allocate a value to the burdened portion of the deal; such allocations are too

4

readily manipulated to defeat the right. <u>Pantry Pride Ent., Inc. v. Stop & Shop Cos.</u>, 806 F.2d 1227, 1231-32 (4<u>th</u> Cir. 1986).

Even though the litigation has focused narrowly on "package deal" issues, this is not at all a "package deal" case. Wells made two independent offers: one for the lot burdened by the right of first refusal, one for the rest of the property. Rappaport has come forward with no evidence suggesting that Banfield or her agents had any role whatsoever in determining the purchase prices Wells would offer. Nor is there any evidence that either offer was contingent in any way on the other, whether overtly or secretly. Moreover, both offers were made at the same time. Thus, Banfield was free to accept one contract and not the other. Though Wells wanted to price the 25-acre lot high to discourage Rappaport from exercising his right of first refusal, he had a great incentive to not allocate too much of the total price to the 25-acre lot: Banfield might accept a disproportionately high price on the 25-acre lot and reject a disproportionately low price on the rest of the property. We see in the record no less than good faith offers in a competitive, arms-length environment by a third party, Wells. Rappaport simply provides no evidence to the contrary.

Rapapport's theory in this case, essentially, is that the court should infer that his right has not been preserved because the offer price on the 25-acre lot is simply far too high. He says, "I am requesting that the Court order that the 25.1-acres be sold without any connection—whether formal or informal—to a sale of the balance of the Banfield property. That is the only way I believe that the true market value of the 25.1-acres can be assessed, and for my right of first refusal to be fairly honored." Aff. of Jerome Rappaport ¶ 5, filed Aug. 25, 2003. Further,

> In this case, there is strong evidence of manipulation. The same purchaser acquired 78 acres of land from defendant Banfield . . . . There was an allocation of $150,000.00 in value to the 25-acre parcel that was already subject to an easement in favor of Mr. Rappaport. That price of $6,000.00 per acre exceeded the only appraised value by $92,000.00

5

> And to make maters [sic] worse, the parcel is farm land
> already subject to an easement interest that essentially renders
> it unmarketable. In effect, the defendants are claiming that
> the fair market value of the right to erect a single structure on
> 25.1 acres, which otherwise are subject to a perpetual
> easement for the raising of crops and the pasturing of cattle, is
> $150,000.00. That assertion is preposterous.

Rappaport's Mem. in Opp. to Second Mot. for Summ. J. 10, filed Feb. 9, 2005). That is, Rappaport claims a right to purchase the 25-acre lot at an objectively determined fair market value calculated without any consideration of the 25-acre lot's relation to the balance of the Banfield property. Rappaport never had any such right.

Rappaport's right was to buy at the highest good faith offer that Banfield could inspire from a third party. Obviously, a great deal of the value of 25-acre lot depends on its location and role relating to the Banfield home; while open, it alone provides the outstanding view. Nothing in the language of the right of first refusal limited Banfield's ability to attempt to maximize the sales prices of her property by selling the burdened lot at the same time as the rest of it. To put it the other way: nothing required Banfield to sell the burdened lot only after she sold the rest of the property, or vice-versa. Nor is there any evidence to suggest that the prices might have come in differently if she did. Rappaport's right of first refusal simply gave him no power to affect how a third party would bid.

It may well be true that Wells, the third party, attempted to maximize the price of the 25-acre lot in a patent effort to dissuade Rappaport from exercising the right of first refusal. But Wells' actions in that regard are not evidence of any breach of Rappaport's right of first refusal. Wells had one bite at the apple: make the best offer first and hope Rappaport does not exercise; Wells had no ability to counter-bid. Wells was an arms-length third-party "competitor for the property" without any contractual obligations to Rappaport. *Uno Restaurants.*, 805 N.E.2d at 964. Banfield had no obligation to reject Wells' offer and renegotiate one with a

6

price allocation more favorable to Rappaport. See *id.* at 965. That the value of the 25-acre parcel was highly dependent on its relation to the rest of the Banfield property does not make this a "package deal" type of case. The parties have submitted no cases so holding.

"Rights of first refusal provide the weakest protection of all possible option arrangements. By its very nature, a right of first refusal that burdens land desired by a third party encourages the third party to offer the highest price possible." *Id.* at 966 (citation omitted). Rappaport has come forward with no evidence suggesting any sort of collusion or other improper effort to undermine the exercise of his right of first refusal. Banfield merely received what Rappaport considered to be a remarkably high bid; she found the bid acceptable and notified Rappaport that his right of first refusal had begun to run. Rappaport eventually exercised the right on the terms offered by Wells, and now owns the 25-acre lot. Wells got the rest of the property.

There are no genuine disputes of material fact to resolve in this case, nor is there any basis for relief for Rappaport.

Defendants' motion for summary judgment is granted.

Dated at Montpelier, Vermont, _____, 20___.

_____
Judge

7