Moraska v. Moraska, No. S0279-11 CnC (Crawford, J., Dec. 10, 2012)

[The text of this Vermont trial court opinion is unofficial. It has been reformatted from the original. The accuracy of the text and the accompanying data included in the Vermont trial court opinion database is not guaranteed.]

STATE OF VERMONT

| SUPERIOR COURT | CIVIL DIVISION |
|---|---|
| Chittenden Unit | Docket No.: S0279-11 CnC |

Susan L. Moraska
        Plaintiff

        v.

Albert F. Moraska, Jr.
        Defendant

DECISION ON MOTION FOR SUMMARY JUDGMENT

This case is a dispute over an inheritance between plaintiff Susan L. Moraska and her brother, defendant Dr. Albert F. Moraska, Jr. The core of the parties' dispute is whether Albert agreed to accept 100% of his late father's IRA account—valued at close to $1 million—in exchange for granting Susan 100% ownership of the parties' now-deceased parents' home in Charlotte, Vermont.[1] Susan claims that Albert did so agree, but has refused to relinquish his 25% interest in the homestead property to her. She seeks either: (1) an order declaring that Albert has no interest in the homestead property and that she, as trustee of her mother's trust, may convey the trust's entire interest in the property to herself; or (2) an order requiring Albert to return all funds he received from the IRA account to Albert Moraska, Sr.'s estate. Albert has filed a motion for summary judgment, arguing that "the contract Susan is attempting to enforce relates to real estate but was never reduced to writing," and thus Susan's claim runs afoul of the Statute of Frauds, 12 V.S.A. § 181. Mot. for Summ. J. at 1 (filed Sept. 19, 2012).

BACKGROUND

The following facts are undisputed except where noted.[2] Susan and Albert are the children of Betsy C. Moraska and Dr. Albert F. Moraska, Sr., both late of Charlotte, Vermont. In 1999, Betsy and Albert Sr. each executed A-B trusts,[3] and each conveyed an undivided one-half interest in their Charlotte homestead to their respective trusts. Susan and Albert were each named as remaindermen, each to receive one-half of each trust's principal. Betsy Moraska died in 2006. Since Betsy Moraska's death, her one-half interest in the homestead has remained held in trust. Entry Order at 1 (filed May 23, 2012).

---

[1] The court refers to the parties by their first names to avoid confusion with the name of their late father, Dr. Albert F. Moraska, Sr. No disrespect is intended.

[2] The parties' Rule 56 statements are very brief and direct the court to relatively few materials in the record. Only a few facts, however, are material to the issue raised by Albert's motion. For context, the court has also included some facts admitted by Albert in his answer to Susan's complaint, and some facts that the court and the parties have all understood to be undisputed.

[3] An A-B trust is "[a] trust into which just enough of a decedent's estate passes, so that the estate can take advantage of the unified credit against federal estate taxes." Black's Law Dictionary, bypass trust (also termed A-B trust) (9th ed. 2009) (WL).

Albert Sr. died in 2010.  Susan claims that in March 2010—prior to Albert Sr.'s death—she and her brother met with their father, who was getting sicker and who, in Susan's words, "wanted to get things taken care of before he died."  Susan Moraska Dep. 70:22–25.  According to Susan, her father said at that meeting that he wanted Susan to have the house, and he wanted Albert to have his Schwab IRA account.  *Id*. at 70:7–8.  Susan asserts that Albert agreed that it made "a lot more sense[] for Susan to have the property," *id*. at 71:24–25, and that he agreed to release his interest in the house in exchange for being designated the sole beneficiary of the IRA account.  Compl. ¶ 12.  Albert denies these allegations.

It is undisputed that there is no writing signed by Albert that evidences any agreement on his part to transfer his interest in the homestead to Susan.  Albert does not dispute that he received 100% of the Schwab account.  Answer ¶ 13 (filed Apr. 18, 2011).  Nor does he dispute that Albert Sr.'s trust left all its interest (an undivided one-half interest) in the homestead to Susan.  Mot. for Summ. J. at 2.  He maintains, however, that he currently owns a 25% interest in the homestead (half of the one-half interest held in Betsy Moraska's trust).  See Answer ¶ 17.

ANALYSIS

The applicable portion of Vermont's Statute of Frauds provides as follows:

An action at law shall not be brought in the following cases unless the promise, contract or agreement upon which such action is brought or some memorandum or note thereof is in writing, signed by the party to be charged therewith or by some person thereunto by him lawfully authorized: . . .

(5) A contract for the sale of lands, tenements or hereditaments, or of an interest in or concerning them. Authorization to execute such a contract on behalf of another shall be in writing . . . .

12 V.S.A. § 181.  Thus, "[i]n general, a contract for the sale of lands is controlled by the Statute of Frauds and must be in writing to be enforceable."  *In re Estate of Gorton*, 167 Vt. 357, 361 (1997).  Here, despite some suggestion by Albert that this case might involve a disclaimer of an interest in trust rather than a contract (and that Susan's claims would fail under that circumstance), Susan does not dispute that the transaction at issue was, if anything, a conveyance of an interest in land.  See Opp'n at 4 (filed Oct. 24, 2012).

Susan argues instead that, despite the operation of the Statute, the alleged oral agreement is enforceable.  Her argument is based on the doctrine of "part performance," under which an oral contract to convey real estate may be valid in spite of the Statute of Frauds. *Jasmin v. Alberico*, 135 Vt. 287, 289 (1977).  "A court may specifically enforce an oral contract to convey land, despite the Statute of Frauds, where the plaintiff is equitably entitled to the real estate." *Gorton*, 167 Vt. at 361.  "Enforcement is justified on the ground that repudiation by one party after the other has fully performed amounts to a virtual fraud."  *Id*. (citing Restatement (Second) of Contracts § 129 cmt. a).  And of course, since the purpose of the Statute of Frauds is to prevent frauds, that purpose would be frustrated if its application promoted fraud.  See *id*.

2

Specifically, the "part performance" doctrine is described as follows:

> A contract for the transfer of an interest in land may be specifically enforced notwithstanding failure to comply with the Statute of Frauds if it is established that the party seeking enforcement, in reasonable reliance on the contract and on the continuing assent of the party against whom enforcement is sought, has so changed his position that injustice can be avoided only by specific enforcement.

Restatement (Second) of Contracts § 129. Thus, to come within the "part performance" exception, the plaintiff must show: "(1) there was an oral agreement (2) upon which [she] reasonably relied (3) by changing [her] position so that [she] cannot be returned to [her] former position, and (4) the other party to the agreement knew of such reliance." *Gorton*, 167 Vt. at 362.

The court concludes that there are triable issues of fact on each of these elements. Taking Susan's assertions as true, there was an oral agreement between Albert and his father, with Susan as an intended third-party beneficiary: Albert agreed to release his 25% interest in the house to Susan, and Albert Sr. agreed to designate his son as the sole beneficiary of the IRA account.[4] In any case, the basis of Albert's argument for present purposes is not that there was no agreement, but that Susan "cannot establish an irretrievable change in position based on the alleged agreement she seeks to enforce." Mot. at 5.[5]

Susan asserts that she does not need to show that *she* changed her position. She contends that the agreement was between Albert and Albert Sr., and that it was *Albert Sr.* who changed position by making Albert the sole beneficiary on the IRA account—irretrievably so because the elder Albert died shortly after making that change. Opp'n at 3–4. The court agrees. Albert Sr.'s alleged decision to make the change to the IRA account's beneficiary would qualify as a substantial and irretrievable change in his position on reliance of his son's alleged agreement to release his interest in the house.[6] It would be the sort of parol family settlement or arrangement that has been routinely enforced in equity. See Annotation, *Doctrine of Part Performance in Suits for Specific Performance of Parol Contract to Convey Real Property*, 101 A.L.R. 923 (1936). This case is thus quite different from *Jasmin v. Alberico*, where the change in position consisted only of repairs and improvements that were indistinguishable from those acts that a

---

[4] Giving Susan the benefit of all reasonable doubts and inferences, the court presumes that, prior to Albert Sr.'s action to change the beneficiary of the IRA account, Susan was to receive at least a portion of it. In that sense, the alleged agreement also operated to the detriment of Susan, although in a way that, according to Susan's allegations, the parties agreed was fair given that she would also benefit from becoming the 100% owner of the house.

[5] Elements (2) and (3) appear to be the locus of most disputes concerning the operation of the part performance doctrine. *Gorton*, 167 Vt. at 362 ("The main issue in dispute, as in most cases of this nature, is whether appellants have alleged a substantial and irretrievable change in position in reliance on the agreement.").

[6] Albert concedes that the Statute of Frauds cannot be used to promote a fraud, but he argues there Susan has not shown that it would be fraudulent or unfair if relief is denied in this case. He maintains that Susan's argument is just that she is entitled to relief because it is what her father intended. Susan does indeed claim that her father intended her to own 100% of the house, but she also claims that Albert agreed to release his 25% interest in it.

3

tenant responsible for the maintenance of leased premises would have taken. 135 Vt. 287, 290 (1977).

The part performance rule articulated above states that it is *the party seeking enforcement of the oral promise* who must have changed position in reliance. The court concludes, however, that the purpose of the part performance rule—to avoid fraud—would be frustrated if intended third-party beneficiaries of agreements could not argue that their contractual benefactors changed position in reliance on the oral contract. See *Goresen v. Gallagher*, 468 N.Y.S.2d 940, 941–43 (N.Y. App. Div. 1983) (wife was intended third-party beneficiary of oral contract between her estranged husband and a real estate broker who purchased the marital home at a foreclosure sale, and part performance of the oral contract took it out of the statute of frauds). In other words, "the real question . . . is not so much whose acts will suffice under the doctrine of part performance, as who will be prejudiced or injured because of the acts if the contract is not performed." Annotation, *Doctrine of Part Performance in Suits for Specific Performance of Parol Contract to Convey Real Property*, 101 A.L.R. 923 (1936). Here, Susan is plainly the person who will be injured if the alleged contract is proved but not performed.

In addition to the above reasons, the court notes that its equitable power based on the promisee's reliance is to be cautiously exercised "in light of all the circumstances." Restatement (Second) of Contracts § 129 cmt. a. The scant record as it has been developed so far is insufficient for the court to say with confidence that it can make a decision now about whether or not to exercise its equitable power to enforce the alleged oral contract.

ORDER

Defendant's motion for summary judgment is denied.

Dated at Burlington this _____ day of December 2012.

_____
Geoffrey W. Crawford
Superior Court Judge

4