*Note: Decisions of a three-justice panel are not to be considered as precedent before any tribunal.*

## ENTRY ORDER

SUPREME COURT DOCKET NO. 2014-372

FEBRUARY TERM, 2015

| | | |
|---|---|---|
| Susan L. Moraska | } | APPEALED FROM: |
| | } | |
| | } | Superior Court, Chittenden Unit, |
| v. | } | Civil Division |
| | } | |
| | } | |
| Albert F. Moraska | } | DOCKET NO. 279-3-11 Cncv |

Trial Judge: Dennis R. Pearson

In the above-entitled cause, the Clerk will enter:

Defendant Albert Moraska appeals a ruling of the superior court, civil division, that he entered into a contract with his father, Dr. Albert Moraska, requiring him to relinquish his interest in the family homestead to his sister, plaintiff Susan Moraska. We affirm.

Dr. Moraska, who died in May 2010, had a large-animal veterinarian practice that he ran from his home in Charlotte, Vermont, for many years. In July 1999, Dr. Moraska and his wife, Betsy Moraska, executed reciprocal trust agreements that, in relevant part, conveyed a one-half interest in the Charlotte homestead to their respective trusts. Susan and Albert were named as remaindermen, each to receive one-half of each trust's principal. Susan assisted her father in the veterinary business and lived in the family home. Albert has lived and worked in Colorado since 1991.

Betsy died in 2006, at which time her trust became irrevocable. Following Betsy's death, Dr. Moraska's health began to fail. Susan became her father's nurse, personal assistant, and home companion. From 2007 until his death in 2010, Dr. Moraska consistently and repeatedly expressed to numerous people, including his attorney and medical providers, his intent that Susan obtain sole ownership of the Charlotte homestead. In April 2008, Dr. Moraska changed the beneficiary designations on his Charles Schwab IRA account, which was not in his trust, to give Albert seventy-five percent (rather than half) of the proceeds upon his death, and Susan the remaining twenty-five percent. Five months later, in September 2008, Dr. Moraska amended his trust to provide that Susan would receive the entire fifty percent of the Charlotte property contained therein. At that point, Susan had a seventy-five-percent interest in the property—twenty-five percent from Betsy's trust and a contingent fifty percent from Dr. Moraska's trust.

In March 2010, Albert came to Vermont to visit his father, who was within two months of his death. On March 18, Albert and Susan had a physical altercation that was upsetting to Dr. Moraska. The next day, Dr. Moraska called both Susan and Albert to his bedside to discuss his desires concerning the distribution of assets upon his death. The ensuing discussion between the three of them is the subject of this lawsuit. Susan contends that Albert agreed to cede to Susan his remaining twenty-five-percent interest in the Charlotte homestead in exchange for their father

agreeing to give Albert all of the value of the cash investment account. Albert contends that the agreement related only to the disposition of personal property in the house, and not the real estate.

The next day, March 20, Susan left the homestead for an extended trip out of state to visit relatives. Albert remained with his father in Vermont. On March 22, Albert drove his father to the bank, where Dr. Moraska executed a first codicil to his will directing that his residence and real estate be devised and transferred to his daughter upon his death. The next day, March 23, Dr. Moraska received confirmation that Albert had been made the sole beneficiary of the Schwab account. The account had a value of approximately $1,000,000 on the date of Dr. Moraska's death six weeks later. The entire proceeds of the account were transferred to Albert in June 2011. In connection with the estate proceedings, the Charlotte real estate was appraised at approximately $765,000.

Following Dr. Moraska's death on May 2, 2010, Albert declined to agree to a transfer to Susan of his twenty-five-percent interest in the Charlotte property stemming from Betsy's trust, which, as it turned out, was unaffected by the codicil that Dr. Moraska had attached to his will six weeks before his death. Susan sued Albert in March 2011, contending that at the March 19 meeting Albert agreed to cede to her his interest in the homestead property in exchange for being designated the sole beneficiary of the Schwab account, and asking the superior court to either order the conveyance of Albert's interest in the Charlotte property to her or order Albert to return all of the funds he received from the Schwab account. The court later allowed Susan to amend her complaint to include counts of breach of contract, estoppel, and unjust enrichment. In December 2012, the court denied Albert's motion for summary judgment, concluding that there were triable issues of fact concerning Albert's Statute of Frauds defense and Susan's claim of an exception to that defense.

A bench trial was held on March 17, 2014. At the close of Susan's evidence, the court granted Albert's motion for judgment as a matter of law as to Susan's claim of unjust enrichment. Following the bench trial, the superior court entered judgment in favor of Susan on her breach-of-contract count and, in the alternative, on her quasi-contract count. Regarding the breach-of-contract count, the court concluded that there was an agreement as to all essential terms between Albert and his father at the March 19 meeting. The court did not find credible Albert's version of what he and his father had agreed to. Accordingly, the court ordered Albert to relinquish to Susan any rights or interest he had in the Charlotte property within thirty days of the judgment.

On appeal, Albert argues that the record contains no credible evidence to support the trial court's findings and determination that he and his father entered into a contract during the March 19 meeting. He claims that Susan's testimony as to what transpired during the March 19 meeting was nothing more than Albert's recognition of his father's testamentary wishes. In contending that there was no direct evidence of an agreement, Albert emphasizes Susan's acknowledgement of her belief that there was nothing for Albert or her to do as a result of the meeting because their father would handle everything by changing the beneficiary on the Schwab account and adding the codicil to his will. Albert asserts that there was no evidence that he agreed to anything—let alone that he would give up property that he was entitled to through Betsy's trust—and that the circumstantial evidence was insufficient to support the court's finding of a contract.

2

In making these arguments, Albert takes a different tack than he took at trial, where he acknowledged that an agreement between him and his father had taken place at the March 19 meeting but contended that the agreement concerned only personal property in the house. Specifically, he testified that his father gave him the remainder of the Schwab account in exchange for Susan receiving more of the personal property. The court explicitly found, however, that Albert's version of the oral agreement between him and his father was not credible. See Benson v. Hodgdon, 2010 VT 11, ¶ 10, 187 Vt. 607 (mem.) (stating that "review of a trial court's finding of fact is curbed by . . . deference to that tribunal's unique position to assess witness credibility and the weight of the evidence presented"). Moreover, Albert acknowledged at trial that his father signed the codicil to his will—which directed that Susan receive the entire homestead property—in direct response to the March 19 meeting three days earlier. Despite the disconnect between what the codicil addressed and what he claimed the March 19 agreement was about, Albert insisted that the agreement concerned only personal property. Not only did the court find that testimony not credible, but it also found not credible Albert's claim that his father assured him that the codicil was not binding and that he could sell his share of the homestead to Susan at whatever price he wanted.

For her part, Susan testified that at the March 19 meeting her father told her and Albert that he wanted Susan to have the house and Albert to have the Schwab account, each of which he believed to be of approximately equal value. She specifically testified that "it was all agreed on." She further testified that her father stated that "[i]f we didn't agree he wasn't going to do it." Thus, notwithstanding Albert's arguments to the contrary, there was direct evidence that Albert agreed with his father that he would cede to Susan any claim he had on the house in exchange for his father making him the sole beneficiary on the Schwab account. There is also strong circumstantial evidence to support the direct evidence—namely, that: (1) three days after the March 19 meeting, Albert took his ailing father to the bank to sign a codicil to his will, though apparently ineffective, that purported to direct conveyance of the house solely to Susan; and (2) four days after the March 19 meeting, while Albert was still with his father at the Charlotte homestead, Dr. Moraska received confirmation that Albert was the sole beneficiary of the Schwab account.

Whether an agreement exists is a question of fact that "depends, in part, on the reasonable inferences that may be drawn from the facts of the case." Quenneville v. Buttolph, 2003 VT 82, ¶ 16, 175 Vt. 444; Bixler v. Bullard, 172 Vt. 53, 58 (2001) ("The question whether there was a contract between the parties does not depend alone on the specified facts found but also upon reasonable inferences to be drawn from them." (quotation omitted)). "We will overturn a factual finding of the trial court only where there is no credible evidence to support it, regardless of whether there is substantial evidence to contradict it." Quenneville, 2003 VT 82, ¶ 17. In this case, there was sufficient evidence, both direct and circumstantial, to support the trial court's finding that Albert agreed to relinquish to Susan any remaining rights he had in the house in exchange for being designated the sole beneficiary on his father's Schwab account.

Albert makes much of the fact that both his father and Susan, notwithstanding contrary advice by his father's attorney, believed that the codicil added to the will shortly after the March 19 meeting was sufficient to give Susan the house, and thus he was not required to do anything. The fact that Dr. Moraska and his daughter may have believed that the codicil was sufficient in that regard does not demonstrate that Albert did not promise to abide by his father's wishes and relinquish to Susan his interest in the house in exchange for being made the sole beneficiary of the Schwab account. There was some evidence of uncertainty over whether the codicil would be

3

sufficient to ensure that Susan would be the sole owner of the house, and thus Dr. Moraska may have wanted to obtain Albert's promise to ensure that that occurred.

Because of our resolution of this issue, we need not address Albert's argument that the trial court erred by ruling that an agreement could be implied under a theory of quasi-contract.

Albert's final argument is that the trial court erred by ordering enforcement of a contract involving real property without finding facts essential to the part-performance exception to the Statute of Frauds defense he raised. We find this argument unavailing. In its December 2012 decision denying Albert's motion for summary judgment, the superior court addressed Albert's Statute of Frauds defense. As the court noted, "[a] court may specifically enforce an oral contract to convey land, despite the Statute of Frauds, where the plaintiff is equitably entitled to the real estate." In re Estate of Gorton, 167 Vt. 357, 361 (1997). As we stated in Gorton, "[e]nforcement is justified on the ground that repudiation by one party after the other party has fully performed amounts to a virtual fraud." Id. Thus, an oral agreement for the transfer of land is enforceable "where the plaintiffs can show (1) there was an oral agreement (2) upon which they reasonably relied (3) by changing their position so that they cannot be returned to their former position, and (4) the other party to the agreement knew of such reliance." Id. at 362.

As the superior court pointed out, the main issue in dispute in cases concerning the part-performance exception to the Statute of Frauds "is whether appellants have alleged a substantial and irretrievable change in position in reliance on the agreement." Id.; see Quenneville, 2003 VT 82, ¶ 18 (stating that oral agreement involving transfer of land may be removed from Statute of Frauds "if the proponent can show that, in reliance on the agreement, he or she suffered a substantial and irretrievable change in position" (quotation omitted)). Although the court in its summary judgment decision determined that there were triable issues on the elements of the exception, it stated that the basis of Albert's argument was not that there was no agreement but rather that Susan would be unable to establish an irretrievable change of position based on the alleged agreement she sought to enforce. More importantly, the court rejected Albert's argument that Susan could not show an irretrievable change in position, ruling that, as a third-party beneficiary of the alleged agreement between Albert and his father, she did not need to show that she changed her position, but rather that Dr. Moraska irretrievably changed his position as the result of the agreement. In so ruling, the court reasoned that the purpose of the part-performance exception to the Statute of Frauds is to avoid fraud, and that that purpose would be frustrated if third-party beneficiaries could not argue that their contractual benefactors changed position in reliance on an oral contract. The court then found that Dr. Moraska's decision to make Albert the sole beneficiary to the Schwab account as part of the alleged agreement "would qualify as a substantial and irretrievable change in his position on reliance of his son's alleged agreement to release his interest in the house." Albert has not challenged this finding.

Following the bench trial, the trial court found that there was an agreement between Albert and his father that Albert cede to Susan his interest in the house in exchange for Dr. Moraska making Albert the sole beneficiary on the Schwab account. The court also found that Dr. Moraska, in reliance upon the agreement, made Albert the sole beneficiary of the account and attempted, via a codicil to his will, to convey the house solely to Susan. The court also found that within days of the March 19 agreement, when Albert was with his father at the house, Dr. Moraska received confirmation that Albert had been made the sole beneficiary of the Schwab account, and Albert took his father to the bank to add a codicil to his will in an attempt to convey

4

the house solely to Susan upon his death. Based upon the court's rulings and findings, each of the elements of the part-performance exception to the Statute of Frauds was met.

Affirmed.

BY THE COURT:

_____
Paul L. Reiber, Chief Justice

_____
John A. Dooley, Associate Justice

_____
Harold E. Eaton, Jr., Associate Justice