STATE OF VERMONT
WASHINGTON COUNTY, SS.

FILED
574
1999 DEC 28 A 9: 19

SUPERIOR COURT
WASHINGTON COUNTY

Robert LeFevre           )

                          )      Washington Superior Court

v.                  )      Docket No. 612-10-97 Wncv

                          )

Leon G. Thompson, Jr., and   )

Melody R. Thompson      )

## MEMORANDUM OF DECISION

### Defendants' Motion to Enforce Settlement Agreement

This matter is before the court on the Motion of the Defendants to enforce the terms of an alleged agreement to settle the case. Plaintiff is represented by Jeffrey E. Tobin, Esq.. The Defendant is represented by Oreste V. Valsangiacomo, Jr., Esq. An evidentiary hearing was held on the Motion on September 15, 1999. The attorneys subsequently submitted memoranda of law.

### Findings of Fact

Based on the evidence admitted, the court makes the following findings of fact:

1. As of late August 1997, the Thompsons (defendants) had lived at their residence on Route 14 in South Barre for approximately 15 years. During the time they had lived there, they had used a driveway in common with the neighboring residence to the east, as well as an area of open lawn between that driveway and their own house. On August 26, 1997, Robert LeFevre moved into the residence next door, which he had just purchased. His girlfriend Tracy Brown also moved in with him on that day.

2. A boundary dispute and problem over use of the driveway quickly developed, as Mr.

1

LeFevre claimed title to the driveway and yard area by virtue of his deed. The Thompsons claimed rights by adverse possession. Mr. LeFevre placed a "No Trespass" order on the Thompsons, and the Thompsons placed one on him. The complaint in this case was filed on October 22, 1997.

3. On May 22, 1998, Mr. LeFevre's attorney, Mr. Tobin, wrote to the Thompsons' attorney, Mr. Valsangiacomo, with a proposal described in general terms for resolution of the competing claims. The general outline was that the Thompsons would receive record title to the yard area, and Mr. LeFevre would have exclusive right to the driveway area. A week or two later, all parties met at the Barre Police Department and removed to the property. They discussed possible resolutions and problems. Tracy Brown raised with Chief Stevens the issue of Mr. LeFevre's liability if the Thompsons used the property. No resolution was reached. There was an agreement that the Thompsons could use the yard for the birthday party of their granddaughter, whose birthday was coming up on June 13, 1998.

4. A further meeting took place at the property on September 1, 1998. Chief Stevens was not present. A surveyor was there, as well as an official from an agency of the State. An agreement was reached with the following terms: Mr. LeFevre would have exclusive rights to the driveway area, and the Thompsons would give up any claim to it; the Thompsons would acquire exclusive ownership of the yard area they were claiming by adverse possession; a survey would be done and permits obtained, and the parties would share the necessary costs but otherwise there would be no exchange of money; Mr. LeFevre would be responsible for obtaining necessary permits, as he had a desire to complete the process before the end of December, 1998; Mr. LeFevre would continue to mow the yard; the Thompsons would no longer use the driveway; and

2

the only event that would release the parties from the agreement was the failure of the necessary permits to be obtainable. Mr. LeFevre testified at the hearing that he thought it was mutually understood that the Thompsons would not use the yard area, but no such term was stated by him or anyone else, and was therefore not included in the agreement. There was certainly no agreement that if the Thompsons used the yard area before the implementing paperwork was complete, the agreement could be rescinded.

5. Pursuant to the agreement, a survey of the new boundary line was obtained. Mr. LeFevre continued to mow the yard during the fall. The Thompsons began to make plans to sell their property. The parties worked cooperatively through their attorneys to follow through on the agreement.

6. On November 9, 1998, Mr. LeFevre signed the application for a deferral permit to obtain permission for the transfer of title pursuant to the new boundary line agreed upon. Mr. Tobin, Mr. LeFevre's attorney, sent it to the Thompsons with a request that they pay their share of fees. The Thompsons also signed the application and paid their share of the survey cost on November 10, 1998, and on November 12, 1998, the deferral permit application was submitted by Mr. Tobin,.

7. On February 16, 1999, the court was informed that the case had been settled. No judgment order or order of dismissal has ever been submitted or issued by the court.

8. On March 12, 1999, the application and check were returned to Mr. LeFevre's attorney with information that additional requirements needed to be met. The Thompsons were not informed of this. In April they inquired about the status of the permit application, and received no response.

3

9. As the grass grew in the spring, it was not initially mowed by Mr. LeFevre. Relations were friendly between the neighbors, however. On May 2, 1999, the Thompsons bought a new sit-down lawn mower, and Mr. LeFevre, who was outside putting down staymat near the new boundary line, offered the use of his ramps to unload it. Mrs. Thompson asked if he had heard any news about the permit, and he said he had not.

10. On May 12, 1999, the Thompsons inquired again about the status of the permit application, and received no response. In May, Mr. Tobin was in contact with Barre Town officials concerning the requirements for the permit. No information was ever given to the Thompsons about the prospect of problems or delays in the permit process. As the spring progressed, the Thompsons began mowing the lawn. They also placed their motorboat on its trailer in the area. Mr. LeFevre raised no objection to either of these activities.

11. The cooperative effort to carry out the agreement changed in early June. Mr. Thompson drove his motorcycle across the yard area. This upset Mr. LeFevre, who nonetheless said nothing to the Thompsons. The court held a status conference in the case on June 14, 1999, and at that conference, Mr. Tobin gave notice for the first time that Mr. LeFevre did not wish to go through with the settlement agreement that had been reached. There was no indication that the permitting process had been exhausted without success; rather, the information was that the plaintiff wished to proceed with the case.

12. On July 14, 1999, the Thompsons' attorney filed the Motion to Enforce Settlement Agreement that is presently before the court.

13. In an affidavit filed with the court on July 23, 1999, Mr. LeFevre agreed that there had been an oral agreement to settle the case reached in the fall of 1998, but he claimed that an

4

additional term of the agreement was that no one would use the disputed land area. He claimed that the Thompsons breached the agreement by storing their boat and trailer on it, mowing it, and driving a motorcycle across it. He claimed that such breach excused his further performance under the settlement agreement.

14. After learning of Mr. LeFevre's position, the Thompsons moved their boat and trailer and stopped mowing the yard, and have made no further use of the property.

## Conclusions of Law

The question is whether the Thompsons are entitled to enforcement of the settlement agreement, or whether Mr. LeFevre is entitled to proceed with a hearing on the merits of the case. Mr. LeFevre relies on the successor to the Statute of Frauds, 12 V.S.A. § 181, which provides that: "A contract for the sale of lands, tenements or hereditaments, or of an interest in or concerning them . . . ." must be in writing. He argues that there is no signed settlement agreement setting forth the terms on which property interests are to be transferred, and hence he is not bound. The Thompsons argue that Mr. LeFevre's admission, in his response to the Motion to Enforce, that there was an oral contract is sufficient to take the contract out of the Statute, and further that his failure to raise the Statute as a defense constitutes a waiver of any right to rely on the Statute. The Thompsons further argue that even if a writing is required, that requirement is satisfied by the written application for a deferral permit submitted by Mr. LeFevre, in which the transaction is specifically described, and an attached survey is incorporated by reference.

It is clear that there was an oral settlement agreement, as acknowledged by Mr. LeFevre. Its terms were also clear and comprehensive, as set forth in the findings. The court concludes

5

that the Thompsons are entitled to enforcement of the oral settlement agreement on several grounds.

First, Mr. Lefevre was required to raise the Statute for the Prevention of Frauds and Perjuries as an affirmative defense in a pleading responsive to the Motion for Enforcement. See V.R.C.P. 8(c). He did not include it in his response, which was filed. The Statute was not raised as a defense until the day of hearing, which was too late to put the Thompsons on notice. Therefore, it was waived as a defense.

Even absent a waiver, the Statute was satisfied, in that there was a writing setting forth specifically the terms of the land transaction, signed by Mr. LeFevre, the person to be charged. The writing was the November 9, 1998 deferral permit application, which was submitted on November 12, 1998. In a similar case, the Court has held such a writing sufficient to satisfy the requirements of the Statute of Frauds, the predecessor to the current statute. "Not only does it appear from the exhibits that there was a written offer by the defendant, the party here charged, but the offer was accepted orally, if not in writing, before it was withdrawn by the defendant. Thus this offer was a sufficient memorandum of the contract to satisfy the statute." First Nat'l Bank of St. Johnsbury v. Laperle, 117 Vt. 144, 148 (1952) (citations omitted).

In addition, part performance is sufficient to take a contract out of the requirements of the Statute, even if the deferral permit application were not a sufficient writing. In this case, the Thompsons accepted the offer and changed their position in reliance on it. Their actions in reliance included: paying their share of the survey costs, cooperating promptly to complete the permit application process, making plans to sell their property in reliance on the litigation being settled, assuming responsibility for mowing the yard for which they were to become responsible,

6

and using it for their boat and motorcycle. All of this was done by the Thompsons in the expectation that the implementation of the agreement would be forthcoming, thereby rendering moot the "No Trespass" order. See Contractor's Crane Serv., Inc. v. Vermont Whey Abatement Auth., 147 Vt. 441, 449 (1986) ("if a party relies on an oral promise, fully performing its end of the bargain, then a written promise is not required if it would be fraud to allow the promisor to deny the contract.") (citing Nichols v. Nichols, 139 Vt. 273, 277 (1981)).

## ORDER

Based on the foregoing reasons, the defendants' Motion to Enforce Settlement Agreement is GRANTED. Defendants' attorney shall prepare an Order.

Dated at Montpelier, Vermont this _27th_ day of _December_ 1999.

_Mary Miles Teachout_
Hon. Mary Miles Teachout
Superior Judge, presiding

7